STATE OF NORTH CAROLINA v. MATTHEW THOMAS RICH

No. 161PA99

(Filed 7 April 2000)

**1. Homicide— malice—instructions—second-degree murder—automobile accident—attitudinal circumstances**

The trial court did not err in a prosecution for second-degree murder by instructing the jury that malice may be present if only one of the attitudinal circumstances constituting malice— wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, a mind regardless of social duty and deliberately bent on mischief—is found to exist. The attitudinal

circumstances listed by the trial court in the instruction serve only as descriptive words or phrases and do not constitute elements of malice so that the State need not prove each and every one of those attitudinal examples of malice in order for the jury to infer malice.

**2. Homicide— instructions—malice—recklessness of consequences**

The trial court's instruction allowing the jury in a second-degree murder case to find malice based on "recklessness of consequences" did not lower the culpability level required to convict a defendant of second-degree murder to a level of culpable negligence since the trial court's instructions as a whole reflected terms which described the degree of recklessness sufficient for the jury to find the state of mind which constitutes malice, and the jury could not have confused such a high degree of recklessness with mere culpable negligence.

**3. Homicide— instructions—malice—deliberately bent on mischief**

The trial court did not err in its definition of "deliberately bent on mischief" as used in its instruction on malice in a prosecution for second-degree murders arising from an automobile accident by failing to convey the appropriate concepts of deliberateness and intention since it was necessary for the State to prove only that defendant had the intent to perform the act of driving in such a reckless manner as reflects knowledge that injury or death would likely result, thus evidencing depravity of mind; the State was not required to show that defendant had a conscious, direct purpose to do specific harm or damage, or had a specific intent to kill; and the State presented testimony that defendant drove his vehicle at a high rate of speed while impaired, on the wrong side of the road, in a no-passing zone and in violation of right-of-way rules. Therefore, the jury was properly focused on defendant's intention to perform an act which reflected the level of intent that is associated with a person being "deliberately bent on mischief."

**4. Homicide— instructions—malice—deliberately bent on mischief**

The trial court's instruction on the meaning of "deliberately bent on mischief" in a prosecution for second-degree murders arising from an automobile accident could not have caused the jury to confuse malice with culpable negligence where the trial

STATE v. RICH

[351 N.C. 386 (2000)]

court never mentioned culpable negligence to the jury in connection with its charge on second-degree murder but focused on the term "malice"; and the instructions clearly required a finding of malice sufficient to support second-degree murder if the jury concluded that defendant's actions were such as to be inherently dangerous to human life and were done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief.

### 5. Evidence— lay opinion—investigating officer—driving while impaired

An investigating officer was properly permitted to state his opinion in a prosecution for two second-degree murders that defendant was driving while impaired when he collided with the victims' vehicle for the purpose of showing malice where the officer based his opinion not only on the odor of alcohol, but also on his investigation of the accident and upon his experience enforcing traffic laws and dealing with intoxicated drivers.

### 6. Evidence— other crimes—prior speeding convictions— malice

Evidence of defendant's prior convictions for speeding was admissible under Rule 404(b) to show malice in this prosecution for second-degree murders arising from an automobile accident in which the State's evidence tended to show that defendant drove his vehicle on the wrong side of the road at a high rate of speed while impaired. This evidence was not offered to show that defendant was speeding at the time of the collision but to show that defendant knew and acted with a total disregard of the consequences, which is relevant to show malice.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 132 N.C. App. 440, 512 S.E.2d 441 (1999), finding no error in two judgments for second-degree murder entered by Albright, J., on 25 September 1997 in Superior Court, Guilford County. Heard in the Supreme Court 16 November 1999.

*Michael F. Easley, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, for the State.*

*J. Donald Cowan and Shannon R. Joseph for defendant-appellant.*

LAKE, Justice.

Defendant was indicted on 6 January 1997 for two counts of second-degree murder. He was tried at the 15 September 1997 Criminal Session of Superior Court, Guilford County. The jury found defendant guilty of both charges. On 25 September 1997, the trial court sentenced defendant to two consecutive terms of 132 to 168 months' imprisonment. Defendant gave notice of appeal to the North Carolina Court of Appeals on 29 September 1997.

On appeal, the Court of Appeals found no error. *State v. Rich*, 132 N.C. App. 440, 512 S.E.2d 441 (1999). For the reasons discussed herein, we conclude that the Court of Appeals correctly determined that defendant received a fair trial, free from prejudicial error. Accordingly, we affirm the decision of the Court of Appeals.

The State's evidence tended to show that on 29 November 1996, at approximately 10:15 p.m., while traveling on Horse Pen Creek Road in Greensboro, North Carolina, defendant's vehicle collided head-on with another vehicle. The passengers in the other vehicle were Todd Allan Bush and James Brady Littrell. The accident occurred at a sharp curve in the road where the posted speed limit was thirty-five miles per hour (mph). The road consisted of two lanes and was marked as a no-passing zone. The stretch of road leading up to the curve had a forty mph speed limit. Just prior to entering the curve in the road, defendant had passed another motorist in a no-passing zone. Defendant was driving at a speed in excess of seventy mph when he entered the curve, crossed into the left lane, and collided with Bush and Littrell. Both Bush and Littrell died as a result.

At approximately 10:30 p.m., Officer L.E. Farrington of the Greensboro Police Department arrived at the scene of the collision. While investigating the accident, Officer Farrington noticed a strong odor of alcohol on defendant. A member of the Emergency Medical Services (EMS) team who responded to the accident, Karrina Crews, testified that she also detected a strong odor of alcohol on defendant as she helped remove defendant from his vehicle. Other members of the EMS team testified that defendant was verbally abusive and combative toward assisting paramedics. Thereafter, EMS transported defendant to Moses Cone Hospital, where Dr. Kai-Uwe Mazur treated defendant. While treating defendant, Dr. Mazur asked him a series of questions, one of which was whether he drank alcohol. Defendant

responded that he frequently consumed alcohol, and on the night of the accident, he drank "several beers and several shots." Dr. Mazur recorded this statement in defendant's medical record.

Officer Gerald Austin of the Greensboro Police Department, who had also investigated the scene of the collision, interviewed defendant at the hospital at approximately 11:35 p.m. that night. During this interview, Officer Austin detected a strong odor of alcohol on defendant. Officer Austin also noted that defendant's eyes were bloodshot and watery, and that defendant had difficulty focusing on him during the interview. Officer Austin concluded that defendant was impaired at the time of the collision. However, there is nothing in the record which indicates that a blood alcohol test was ever administered to defendant.

The State also introduced evidence that defendant had a history of convictions for traffic violations: driving seventy mph in a thirty-five mph zone on 11 August 1995, driving seventy mph in a fifty-five mph zone on 11 May 1994, reckless driving and fleeing to elude arrest on 3 October 1991, driving seventy-six mph in a forty-five mph zone on 6 September 1990, and driving seventy-five mph in a forty-five mph zone on 3 October 1988.

[1] In his first assignment of error, defendant contends that the Court of Appeals erred in approving the trial court's instruction that the jury needed to find only one of the attitudinal components of malice to support a second-degree murder conviction. Defendant argues that the Court of Appeals' affirmance of the trial court's definition of malice conflicts with this Court's decision in *State v. Wilkerson*, 295 N.C. 559, 247 S.E.2d 905 (1978). We disagree.

The trial court instructed the jury as to malice as follows:

Now, members of the jury, our courts have defined malice, and our courts have declared that there are three kinds of malice in our law of homicide. One kind of malice connotes a possible concept of express hatred, ill will, or spite. This is sometimes called actual, express, or particular malice. Another kind of malice arises when an act which is inherently dangerous to human life is done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief. And there is, in addition, a third kind of malice which is defined as nothing more than that condition of

mind which prompts a person to take the life of another intentionally, without just cause, excuse, or justification.

. . . .

Now, I further charge you, members of the jury, with respect to the second kind of malice that I have defined to you, that is, malice which arises when an act which is inherently dangerous to human life is done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief, I say I charge you that any act evidencing wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty and deliberately bent on mischief, though there may be no intention to injure a particular person, is sufficient to supply the malice necessary for second-degree murder.

After beginning its deliberations, the jury requested additional instructions from the trial court regarding "the nature of malice of the second kind." The trial court responded to the jury's question as follows:

[Y]ou have asked me with regard to wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, a mind regardless of social duty and deliberately bent on mischief, as to whether all of these must be present. My answer to that is no. One of these, some of these, or all of these may be proved and may be sufficient to supply the malice necessary for second degree murder. That is a factual determination that you, the jury, must make . . . .

Defendant argues that the Court of Appeals erred in affirming the trial court's instruction to the jury that malice may be present if only one of the six attitudinal circumstances constituting malice is found to exist. Defendant contends that the Court of Appeals erred because the trial court's definition of malice conflicts with the language adopted by this Court in *Wilkerson*. The definition of malice set out in *Wilkerson* originated from a dissent to *State v. Wrenn*, 279 N.C. 676, 185 S.E.2d 129 (1971). *Wilkerson*, 295 N.C. at 578, 247 S.E.2d at 916. In her dissenting opinion to *Wrenn*, Justice (later Chief Justice) Sharp stated:

[Malice] comprehends not only particular animosity "but also wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty

and deliberately bent on mischief, though there may be no intention to injure a particular person." 21 A. & E. 133 (2nd Edition 1902).

> . . . "[It] does not necessarily mean an actual intent to take human life; it may be inferential or implied, instead of positive, as when an act which imports danger to another is done so recklessly or wantonly as to manifest depravity of mind and disregard of human life." *State v. Trott*, 190 N.C. 674, 679, 130 S.E. 627, 629 [(1925)] . . . . In such a situation[,] "the law regards the circumstances of the act as so harmful that the law punishes the act as though malice did in fact exist." 1 Wharton, Criminal Law and Procedure § 245 (Anderson, 1957).

*Wrenn*, 279 N.C. at 686-87, 185 S.E.2d at 135 (Sharp, J., dissenting). This Court later approved that definition of malice in *Wilkerson*, 295 N.C. at 578, 247 S.E.2d at 916.

Defendant asserts that the trial court's formulation of malice conflicts with this Court's definition set forth in *Wilkerson* because the trial court did not require the jury to find all six attitudinal circumstances of malice to exist in order to find that defendant acted with malice. Rather, the trial court instructed the jury that only one of these circumstances may be sufficient for malice to exist. Defendant contends that because the trial court erroneously instructed the jury on malice, the trial court relieved the State of its burden to prove all the essential elements of second-degree murder. This argument is without merit.

In *State v. Leach*, 340 N.C. 236, 456 S.E.2d 785 (1995), this Court held that the elements listed by the trial court in a jury instruction on premeditation and deliberation were examples of circumstances that the jury could use to infer premeditation and deliberation, and that the law did not require that each circumstance be proven. The trial court in *Leach* instructed the jury on premeditation and deliberation for first-degree murder as follows:

> [Premeditation and deliberation] may be proved by proof of a circumstance from which they may be inferred such as a lack of provocation by the [v]ictim; conduct of the [d]efendant before, during and after the killing; threats and declarations of the defendant; use of grossly excessive force or vicious circumstances of the killing or the manner or means by which the killing was done.

*Id.* at 241, 456 S.E.2d at 788. In examining that jury instruction, this Court explained:

> The instruction in question informs a jury that the circumstances given are only illustrative; they are merely examples of some circumstances which, if shown to exist, permit premeditation and deliberation to be inferred. The instruction tells jurors that they "may" find premeditation and deliberation from certain circumstances, "such as" the circumstances listed.

*Id.* at 241, 456 S.E.2d at 789.

Just as the phrases contained in the instructions for premeditation and deliberation serve as examples from which a jury could infer premeditation and deliberation, the attitudinal circumstances given in the jury instruction for malice serve as descriptive phrases. These words or phrases are each descriptive of the type or types of thought, attitude or condition of mind sufficient to constitute malice. Like premeditation and deliberation, "depraved-heart" malice may be "infer[red] or implied." *Wilkerson,* 295 N.C. at 578, 247 S.E.2d at 916. The descriptive phrases listed in the instructions for malice serve to help define malice for the jury. They do not constitute "elements" of malice, which is itself an element of second-degree murder, and thus the State need not prove each and every one of those attitudinal examples of malice in order for the jury to infer the element of malice.

[2] Defendant also argues that if this Court allows the six traditional descriptive words and phrases defining malice to be read in the disjunctive, then it is possible for a jury to convict a defendant of second-degree murder based on a finding of "recklessness of consequences." Defendant asserts that this would effectively lower the culpability level required to convict a defendant of second-degree murder since "recklessness of consequences" is a level of culpability usually associated with negligence. We disagree.

The distinction between "recklessness" indicative of murder and "recklessness" associated with manslaughter "is one of degree rather than kind." *United States v. Fleming,* 739 F.2d 945, 948 (4th Cir. 1984) *cert. denied,* 469 U.S. 1193, 83 L. Ed. 2d 973 (1985). Additionally, this Court has stated:

> "The charge of the court must be read as a whole . . . , in the same connected way that the judge is supposed to have intended it and the jury to have considered it . . . ." *State v. Wilson,* 176 N.C. 751,

[754-55,] 97 S.E. 496[, 497] (1918). It will be construed contextually, and isolated portions will not be held prejudicial when the charge as [a] whole is correct. If the charge presents the law fairly and clearly to the jury, the fact that some expressions, standing alone, might be considered erroneous will afford no ground for reversal.

*State v. Lee*, 277 N.C. 205, 214, 176 S.E.2d 765, 770 (1970) (citations omitted). After reviewing the trial court's jury instructions as a whole, we conclude that the trial court's instructions reflected terms which described the degree of recklessness sufficient for the jury to find the state of mind which constitutes malice. Because the trial court's instructions, in their entirety, conveyed the level of recklessness required for second-degree murder, we cannot conclude that the jury could have confused such a high degree of recklessness with mere culpable negligence. This assignment of error is overruled.

[3] In his next assignment of error, defendant contends that the Court of Appeals erred in approving the trial court's instruction to the jury on the meaning of the phrase "deliberately bent on mischief." After receiving two identical charges on the definition of malice, the jury asked the trial court for a "legally-accepted paraphrase of 'deliberately bent on mischief.' " In response to the jury's question, the trial court stated:

[The term deliberately bent on mischief] connotes conduct as exhibits conscious indifference to consequences wherein probability of harm to another within the circumference of such conduct is reasonably apparent, though no harm to such other is intended. [It] [c]onnotes an entire absence of care for the safety of others which exhibits indifference to consequences. It connotes conduct where the actor, having reason to believe his act may injure another, does it, being indifferent to whether it injures or not. It indicates a realization of the imminence of danger, and reckless disregard, complete indifference and unconcern for probable consequences. It connotes conduct where the actor is conscious of his conduct, and conscious of his knowledge of the existing conditions that injury would probably result, and that, with reckless indifference to consequences, the actor consciously and intentionally did some wrongful act to produce injurious result.

Defendant argues that this instruction erroneously states the meaning of "deliberately bent on mischief" because it fails to convey the

concepts of deliberateness and intention that are intrinsic to the phrase. In the decision below, the Court of Appeals noted that "in this jurisdiction, it is well-settled 'that a charge is to be construed as a whole and isolated portions of a charge will not be held prejudicial where the charge as a whole is correct and free from objection.' " *State v. Rich,* 132 N.C. App. at 447, 512 S.E.2d at 446 (quoting *State v. Poole,* 305 N.C. 308, 324, 289 S.E.2d 335, 345 (1982)). After reviewing the jury instruction in its entirety, the Court of Appeals found no error. *Id.* We agree.

"Second-degree murder is an unlawful killing with malice, but without premeditation and deliberation." *State v. Brewer,* 328 N.C. 515, 522, 402 S.E.2d 380, 385 (1991). "Intent to kill is not a necessary element of second-degree murder, but there must be an intentional act sufficient to show malice." *Id.* at 522, 402 S.E.2d at 385. Accordingly, in the case *sub judice,* it was necessary for the State to prove only that defendant had the intent to perform the act of driving in such a reckless manner as reflects knowledge that injury or death would likely result, thus evidencing depravity of mind. The State was not required to show that defendant had a conscious, direct purpose to do specific harm or damage, or had a specific intent to kill. However, the State did show a pattern of such behavior by eliciting testimony that defendant in this case drove his vehicle at a high rate of speed while impaired, on the wrong side of the road, in a no-passing zone and in violation of right-of-way rules. This is sufficient evidence to support a finding by the jury of malice necessary under second-degree murder. Therefore, after reviewing the trial court's instructions, we conclude that the jury was properly focused on defendant's intention to perform an act which reflected the level of intent that is associated with a person being "deliberately bent on mischief."

[4] Defendant also contends that the trial court's instruction on "deliberately bent on mischief" blurred the distinction between involuntary manslaughter and murder, and would thus allow a jury to return a verdict of second-degree murder when a defendant's conduct amounted to no more than culpable negligence. We disagree.

As stated above, the difference between the type of malice at issue in the case *sub judice* and culpable negligence is the degree of recklessness that would support a finding of each. *See Fleming,* 739 F.2d 945. "Standing alone, culpable negligence supports the submission of involuntary manslaughter." *Brewer,* 328 N.C. at 523, 402 S.E.2d at 386. But when that negligence is accompanied by "an act

which imports danger to another [and] is done so recklessly or wantonly as to manifest depravity of mind and disregard of human life," then it is sufficient to support a second-degree murder charge. *State v. Trott*, 190 N.C. at 679, 130 S.E. at 629, *quoted in Brewer*, 328 N.C. at 523, 402 S.E.2d at 386.

After reviewing the trial court's instructions to the jury in their entirety, we cannot conclude that the trial court's definition of "deliberately bent on mischief" blurred the distinction between involuntary manslaughter and murder. The trial court never mentioned culpable negligence to the jury in connection with its charge of second-degree murder. Rather, the court focused on the term "malice." The jury's instructions clearly required a finding of malice sufficient to support second-degree murder if the jury concluded that defendant's actions were such as to be "inherently dangerous to human life [and were] done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief." Because the trial court's instructions to the jury on the element of malice required for second-degree murder were clear and correct, we cannot conclude that the jury could have confused malice with culpable negligence. Therefore, the Court of Appeals correctly approved the trial court's jury instructions, and this assignment of error is overruled.

[5] In his next assignment of error, defendant contends that the Court of Appeals erred in approving the trial court's admission of the opinion of impairment by one of the investigating officers. Specifically, defendant argues that the opinion testimony lacked a sufficient foundation and was not rationally based on the observations of the witness. We do not agree.

At trial, Officer Gerald Austin testified that in his opinion, "defendant was under the influence of an impairing substance and unable and unfit to operate machinery or equipment of any type." During the cross-examination of Officer Austin, the following colloquy ensued:

Q. And you are then basing your opinion on him lying on a gurney at Cone Hospital concerning him being unable to drive an automobile because he was intoxicated. Is that what you're telling his Honor and the members of this jury?

A. No. What I'm telling his Honor and the members of this jury is based upon my experience of having to deal with people

that I've arrested and charged with D.W.I., whether they be of sound mind and body or whether they be injured. That was the opinion that I formed.

Q. Well, in other words, you formed an opinion, based on other arrests, that an hour and 45 minutes to two hours after Mr. Rich had an accident out there, that he was unable to drive an automobile?

A. Correct, sir.

Q. And that was based on your smelling a moderate odor of alcohol on his breath, is that right?

A. I believe my testimony was it was moderate to strong, and, yes, that's what it's based on.

Q. Beg your pardon?

A. My testimony was that it was moderate to strong, and that is what my opinion is based upon.

In addition to stating on cross-examination that his opinion that defendant was impaired was based only upon the odor of alcohol, Officer Austin also acknowledged that before he testified at trial, he never discussed with the State his opinion that defendant was impaired. Officer Austin also failed to put any notes in his report regarding his opinion that defendant was impaired. At trial, Officer Austin conceded that defendant's bloodshot and watery eyes could have resulted from defendant's head injuries. Finally, Officer Austin never saw defendant walk, and there was no evidence that defendant's speech was slurred.

In the decision below, the Court of Appeals determined that Officer Austin was competent to express an opinion that defendant was driving while impaired when he collided with the victims' vehicle. *State v. Rich*, 132 N.C. App. at 449, 512 S.E.2d at 448. The Court of Appeals reasoned:

Officer Austin's opinion was based on his experience as a law enforcement officer in conjunction with his observations of the circumstances surrounding the collision. Officer Austin testified that as he proceeded to the scene, he noted the posted speed limits, and when he arrived at the place where the accident occurred, he observed the position and condition of the vehicles

involved. He stated that he also witnessed defendant's behavior at the scene and described him as "giving E.M.S. quite a hard time." When Officer Austin later interviewed defendant at the hospital, he detected a "moderate to strong" odor of alcohol about defendant's person. He further noted that defendant's eyes were bloodshot and watery and that defendant had difficulty focusing on the officer during the interview. Armed with these facts, a police officer with more than three years' experience in the enforcement of motor vehicle laws and who has been personally involved in the investigations of nearly 200 driving while impaired cases is competent to express an opinion that defendant was under the influence of alcohol when he collided with the victims' vehicle.

*Id.* Based on the following reasons, we conclude that the Court of Appeals correctly ruled that the trial court properly admitted Officer Austin's testimony.

The rule concerning the admissibility of opinion testimony by lay witnesses provides:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

N.C.G.S. § 8C-1, Rule 701 (1999). Additionally, it is a well-settled rule that a lay person may give his opinion as to whether a person is intoxicated so long as that opinion is based on the witness's personal observation. *State v. Lindley*, 286 N.C. 255, 258, 210 S.E.2d 207, 209 (1974).

Defendant argues that this Court has held that "an odor [of alcohol], *standing alone*, is no evidence that [a driver] is under the influence of an intoxicant." *Atkins v. Moye*, 277 N.C. 179, 185, 176 S.E.2d 789, 793 (1970). However, in that same case, this Court also stated, "the '[f]act that a motorist has been drinking, when considered in connection with faulty driving . . . or other conduct indicating an impairment of physical or mental faculties, is sufficient *prima facie* to show a violation of [N.C.G.S. §] 20-138.' " *Id.* at 185, 176 S.E.2d at 794 (quoting *State v. Hewitt*, 263 N.C. 759, 764, 140 S.E.2d 241, 244 (1965)). In the case *sub judice*, Officer Austin observed the collision scene and observed defendant at the hospital, and two witnesses tes-

tified that they saw defendant's car going seventy mph around a curve just before the collision. Additionally, other witnesses testified as to defendant's odor of alcohol.

We note that Officer Austin's testimony was offered as evidence which tended to show that defendant acted with malice, not that defendant was impaired. Based upon our review of the record in its entirety, we conclude that notwithstanding his cross-examination testimony, Officer Austin based his opinion not only on the odor of alcohol, but also on his investigation of the accident and upon his experience enforcing traffic laws and dealing with intoxicated drivers. Moreover, it is the jury that determines how much weight should be afforded such opinion evidence. *State v. Davis*, 321 N.C. 52, 57-58, 361 S.E.2d 724, 727 (1987). During cross-examination, defendant had the opportunity to discredit Officer Austin's testimony before the jury. Based on the foregoing, we conclude that the Court of Appeals correctly determined that Officer Austin's testimony was competent and admissible evidence which was rationally based on his perception of defendant and his observations at the scene of the accident. This assignment of error is overruled.

[6] In his last assignment of error, defendant contends that the Court of Appeals erred in approving the admission into evidence of defendant's prior traffic violations. Defendant asserts that prior driving-related convictions are irrelevant to the issue of malice at the time of the collision, and that the State introduced evidence of the prior convictions to show that defendant acted in conformity with prior conduct. We disagree.

Rule 404(b) of the Rules of Evidence provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (1999). It is well settled that this "list of permissible purposes for admission of 'other crimes' evidence is not exclusive, and such evidence is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime." *State v. Hipps*, 348 N.C. 377, 404, 501 S.E.2d 625, 641 (1998) (quoting *State v. White*, 340 N.C. 264, 284, 457 S.E.2d 841, 852-53, *cert.*

*denied*, 516 U.S. 994, 133 L. Ed. 2d 436 (1995)), *cert. denied*, 525 U.S. 1180, 143 L. Ed. 2d 114 (1999).

In affirming the trial court's admission of the prior speeding convictions to show malice, the Court of Appeals noted that it has previously and "repeatedly held that evidence of prior convictions is admissible under Rule 404(b) to show the malice necessary to support a second-degree murder conviction." *Rich*, 132 N.C. App. at 450, 512 S.E.2d at 448; *see also State v. Grice*, 131 N.C. App. 48, 505 S.E.2d 166 (1998), *disc. rev. denied*, 350 N.C. 102, —— S.E.2d —— (1999). The Court of Appeals then stated:

> [T]he State, in the present case, sought to establish the malice element of second-degree murder by showing that defendant committed an act evidencing a total disregard for human life— i.e., showing "wickedness of disposition," "recklessness of consequences" or "a mind regardless of social duty and deliberately bent on mischief." Evidence of defendant's prior traffic violations—driving 75 mph in a 45 mph zone, 76 mph in a 45 mph zone, 70 mph in a 35 mph zone, and 70 mph in a 55 mph zone—was relevant to establish defendant's "depraved heart" on the night he struck the victims' vehicle while rounding a sharp curve at a speed at least 40 mph over the posted limit.

*Rich*, 132 N.C. App. at 450-51, 512 S.E.2d at 449.

Defendant's argument that the State introduced the evidence of the prior speeding convictions to show that defendant acted in conformity with prior conduct must fail. The State was not seeking to prove that defendant was speeding at the time of the collision. Rather, by introducing defendant's prior speeding convictions, the State offered additional evidence which tended to show defendant's "totally depraved mind" and "recklessness of the consequences." Because the State offered the evidence to show that defendant knew and acted with a total disregard of the consequences, which is relevant to show malice, the provisions of Rule 404(b) were not violated. This assignment of error is overruled.

For the foregoing reasons, we conclude that the Court of Appeals correctly determined that defendant received a fair trial, free from prejudicial error. Accordingly, we affirm the decision of the Court of Appeals.

AFFIRMED.