STATE OF NORTH CAROLINA v. JAMES MICHAEL DAVIS

No. COA08-1318

(Filed 7 July 2009)

### 1. Homicide— second-degree murder—driving while impaired—sufficiency of evidence—malice

The trial court did not err by denying defendant's motion to dismiss the charges of second-degree murder based on alleged insufficient evidence of malice because: (1) the State presented evidence from which the jury could conclude that defendant had consumed nine to twelve beers in a two-hour time frame but denied it when asked by law enforcement officers, his 0.13 blood alcohol content (BAC) was well-above the 0.08 BAC threshold for driving while impaired, and defendant got into his truck and drove on a well-traveled highway running over a sign and continuing to drive; (2) defendant should have known that he was a danger to the safety of others, but instead continued weaving side to side where he eventually ran off the road and, without braking or otherwise attempting to avoid a collision, crashed into the victim's pickup truck knocking it into the air; and (3) the evidence was sufficient to support a finding of malice.

### 2. Homicide— second-degree murder instruction—burden of proof on malice

The trial court did not abuse its discretion in a second-degree murder case by allegedly lessening the burden of proof on the malice element in the jury instructions because the pertinent additional language did not eliminate the need for the State to prove defendant committed an intentional act, but merely informed the jury that the intentional act did not need to include a specific intent to kill or injure.

### 3. Assault— deadly weapon inflicting serious injury—sufficiency of evidence—intent—driving while impaired—culpable negligence

The trial court did not err by denying defendant's motion to dismiss the charge of assault with a deadly weapon inflicting serious injury based on alleged insufficient evidence of intent because: (1) violation of the driving while impaired statute under N.C.G.S. § 20-138.1 constitutes culpable negligence as a matter of law; (2) there was substantial evidence presented of defendant's

driving while impaired in violation of N.C.G.S. § 20-138.1; and (3) defendant's actions constituted culpable negligence sufficient to meet the intent requirement.

**4. Assault— deadly weapon inflicting serious injury—instruction—burden of proof for intent**

The trial court did not abuse its discretion in an assault with a deadly weapon inflicting serious injury case by allegedly lessening the burden of proof on the intent element in the jury instruction because the pertinent language was in accord with *McGill*, 314 N.C. 633 (1985).

**5. Appeal and Error— preservation of issues—failure to argue constitutional issue at trial**

Although defendant contends the trial court erred by failing to arrest the felony serious injury by vehicle and two felony death by vehicle convictions on the ground that they are lesser included offenses for which he has been convicted and sentenced, this assignment of error is dismissed because defendant made no objection or argument at trial concerning the double jeopardy issue and thus failed to preserve it for appellate review under N.C. R. App. P. 10(b)(1).

Appeal by defendant from judgments entered 11 June 2008 by Judge Richard D. Boner in Gaston County Superior Court. Heard in the Court of Appeals 26 March 2009.

*Attorney General Roy A. Cooper, III, by Special Counsel Isaac T. Avery, III, for the State.*

*James N. Freeman, Jr., for defendant-appellant.*

JACKSON, Judge.

James Michael Davis ("defendant") appeals his convictions of felony serious injury by vehicle, assault with a deadly weapon inflicting serious injury, two counts of felony death by vehicle, and two counts of second-degree murder. For the reasons stated below, we hold no error in part and dismiss in part.

On 16 June 2007, at approximately 8:30 p.m., defendant was driving his 1987 F-350 flat-bed "dually" pickup truck in South Carolina on Highway 321 near the border between North Carolina and South Carolina. He was traveling northbound toward North Carolina when

Deputy Tim Davidson of the York County, South Carolina Sheriff's Department ("Deputy Davidson")—who was engaged in a traffic stop of another vehicle—saw the truck run off the road, strike a sign, and continue driving.

Mary Thomasson was a passenger in a truck driving southbound on Highway 321. She heard a loud boom and saw a traffic sign flying through the air toward her truck. Defendant's truck was weaving side to side.

Just across the border in North Carolina, Warren G. Ray, Jr. ("Mr. Ray") was driving his daughter's 1999 S-10 extended cab pickup truck toward South Carolina. Anna Melissa Ray ("Ray")—Mr. Ray's daughter—was riding in the passenger seat, while Victoria Ray ("Mrs. Ray") was riding in the "jumper seat" in the extended cab. All three were wearing seat belts.

As Mr. Ray was stopped at a stop sign, preparing to turn onto southbound Highway 321, defendant's truck "came out of nowhere and headed right toward [the S-10]." Defendant's truck passed under the nearby train trestle, veered off the road onto the grass, and proceeded toward their truck. Defendant's truck hit Ray's truck with such force that it was "knocked [] straight up and it hit the caution sign and then it just landed back down and flipped over."

Mrs. Ray was thrown from the S-10 through the back window. Emergency medical personnel found Mrs. Ray laying face down on the road without a pulse; she was not breathing. The medical examiner pronounced her dead at the scene.

When Ray woke up, her father was on top of her. Her seatbelt was still buckled. Her father was covered in blood and unresponsive. She was trapped in her truck for what "felt like hours" until emergency crews could cut open the roof of her truck, at which time she was able to climb past her father to get herself out. The medical examiner pronounced Mr. Ray dead at the scene.

Ray was airlifted to the hospital. She suffered severe bruises, scrapes, and scratches. Although she had no internal injuries, a hematoma in her left breast failed to heal and was surgically removed one year later. She had two black eyes, was very stiff for a month, and experienced pain for approximately one year following the collision.

Defendant remained in his truck until emergency crews arrived. An emergency medical technician called for a backboard; however,

defendant got out of his truck on his own and complained of shoulder pain. He denied having had any alcohol to drink. Defendant was taken to the hospital.

At the hospital, Trooper Darius Litaker ("Trooper Litaker") of the Highway Patrol detected a strong odor of alcohol on defendant, notwithstanding the fact that defendant denied that he had been drinking. Trooper Litaker administered an Alkasensor test, which indicated that defendant had alcohol in his system. A subsequent blood test indicated a blood alcohol concentration ("BAC") of 0.09. The hospital also tested defendant for alcohol. That test resulted in a BAC equivalent of 0.11. An expert extrapolated these results to the time of the collision and determined that at that time defendant's BAC was 0.13. He also stated that it would take approximately nine to twelve beers over a two-hour period for a 150 to 200 pound male to register a BAC of 0.13.

Measurements taken at the scene of the collision revealed that the back tires of defendant's truck went off the roadway into the grass and traveled 132 feet before the collision. It was traveling approximately forty-six to forty-eight miles per hour upon impact. After the impact, it continued approximately fourteen feet on pavement and sixty-six feet on grass. Ray's truck moved fifty-five feet after impact. There were no skid marks or other indications that defendant attempted to brake or turn.

On 17 June 2007, the State brought charges against defendant for the deaths of Mr. Ray and Mrs. Ray, the injury to Ray, and associated motor vehicle violations. On 2 July 2007, a grand jury indicted defendant. After trial, a jury found defendant guilty of reckless driving, driving while impaired, felony serious injury by vehicle and assault with a deadly weapon inflicting serious injury for the injuries to Ray, and two counts of felony death by vehicle and two counts of second-degree murder for the deaths of Mr. Ray and Mrs. Ray.

On 11 June 2008, the trial court sentenced defendant to serve forty-five days in the custody of the Gaston County Sheriff for the reckless driving charge, as well as 189 to 236 months in the custody of the Department of Correction for the second-degree murder of Mrs. Ray, followed by an equal term for the second-degree murder of Mr. Ray, followed by a term of nineteen to twenty-three months for felony serious injury by vehicle, followed by a term of twenty-nine to forty-four months for assault with a deadly weapon inflicting serious injury. Defendant also was sentenced to serve twenty-nine to forty-

four months in prison for the felony death by vehicle of Mrs. Ray, followed by an equal term for the same charge as to Mr. Ray. The trial court arrested judgment on the driving while impaired charge. Defendant appeals.

**[1]** Defendant first argues that the trial court erred in denying his motion to dismiss the charges of second-degree murder because the State failed to present sufficient evidence of malice. We disagree.

This Court reviews a trial court's denial of a motion to dismiss criminal charges *de novo*, to determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980).

> The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion.

*Powell*, 299 N.C. at 99, 261 S.E.2d at 117 (citing *State v. Thomas*, 296 N.C. 236, 250 S.E.2d 204 (1978)).

The essential elements of second-degree murder are "the (1) unlawful killing (2) of a human being (3) with malice, but without premeditation and deliberation." *State v. Vassey*, 154 N.C. App. 384, 390, 572 S.E.2d 248, 252 (2002) (citing *State v. McDonald*, 151 N.C. App. 236, 243, 565 S.E.2d 273, 277, *disc. rev. denied*, 356 N.C. 310, 570 S.E.2d 892 (2002)). "Intent to kill is not a necessary element of second-degree murder, but there must be an intentional act sufficient to show malice." *State v. Brewer*, 328 N.C. 515, 522, 402 S.E.2d 380, 385 (1991).

In *State v. Rich*, 351 N.C. 386, 527 S.E.2d 299 (2000), the North Carolina Supreme Court stated that

> it was necessary for the State to prove only that defendant had the intent to perform the act of driving in such a reckless manner as reflects knowledge that injury or death would likely result, thus evidencing depravity of mind. *The State was not required to show that defendant had a conscious, direct*

*purpose to do specific harm or damage, or had a specific intent to kill.*

*Rich,* 351 N.C. at 395, 527 S.E.2d at 304 (emphasis added). The Court recognized that the State had shown "a pattern of such behavior by eliciting testimony that defendant [had driven] his vehicle at a high rate of speed while impaired, on the wrong side of the road, in a no-passing zone and in violation of right-of-way rules." *Id.* Such evidence was sufficient to support a finding of malice by the jury necessary for second-degree murder. *Id.* Defendant contends the facts of his case "are far from *Rich.*"

Here, the State presented evidence from which the jury could conclude that defendant had consumed nine to twelve beers in a two-hour timeframe but denied it when asked by law enforcement officers. His 0.13 BAC was well-above the 0.08 BAC threshold for driving while impaired. He then got into his truck and drove on a well-traveled highway. He ran over a sign and continued driving. At this point, he should have known that he was a danger to the safety of others. He continued weaving side to side. He eventually ran off the road and, without braking or otherwise attempting to avoid a collision, crashed into Ray's S-10 pickup truck, knocking it into the air. This evidence, though different from the evidence presented in *Rich,* is sufficiently similar to support a finding of malice. Accordingly, the trial court did not err in denying defendant's motion to dismiss the second-degree murder charges.

**[2]** Defendant also argues that the trial court erred by lessening the burden of proof on the malice element in the jury instructions. We disagree.

"This Court reviews jury instructions only for abuse of discretion. Abuse of discretion means manifestly unsupported by reason or so arbitrary that [the instructions] could not have been the result of a reasoned decision." *State v. Bagley,* 183 N.C. App. 514, 524, 644 S.E.2d 615, 622 (2007) (internal citations, ellipses, and quotation marks omitted).

Here, the State requested, and the trial court gave, the following instruction:

The fifth thing that the State must prove is that the defendant acted unlawfully and with malice. Malice is a necessary element that distinguishes second[-]degree murder from manslaugh-

ter. Malice arises when an act inherently dangerous to human life is intentionally done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief. *For malice to exist it is not necessary that there be an intent to kill or to injure any person.*

(Emphasis added). Defendant contends that the additional highlighted language lessens the burden of proof leaving the jury with the impression that the State need not prove any intentional act. However, the additional language derives from the *Rich* decision as quoted *supra*. It does not eliminate the need for the State to prove defendant committed an intentional act; it merely informs the jury that the intentional act does not need to include a specific intent to kill or injure. We can discern no abuse of discretion in the trial court's instruction.

**[3]** With respect to the charge of assault with a deadly weapon inflicting serious injury, defendant argues that the trial court erred in denying his motion to dismiss because the State failed to prove the element of intent. We disagree.

[I]ntent is an essential element of the crime of assault, including an assault with an automobile, but intent may be implied from culpable or criminal negligence, if the injury or apprehension thereof is the direct result of intentional acts done under circumstances showing a reckless disregard for the safety of others and a willingness to inflict injury.

*State v. Coffey*, 43 N.C. App. 541, 543, 259 S.E.2d 356, 357 (1979) (internal citation omitted). "Culpable negligence is such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others." *State v. Cope*, 204 N.C. 28, 30, 167 S.E. 456, 458 (1933). Violation of North Carolina General Statutes, section 20-138.1—the driving while impaired statute—constitutes culpable negligence as a matter of law. *State v. McGill*, 314 N.C. 633, 637, 336 S.E.2d 90, 93 (1985). Here, there was substantial evidence presented of defendant's driving while impaired in violation of section 20-138.1. Accordingly, his actions constituted culpable negligence sufficient to meet the intent requirement. Therefore, the trial court did not err in denying his motion to dismiss the charge of assault with a deadly weapon inflicting serious injury.

**[4]** Defendant also argues with respect to this charge that the trial court erred by lessening the burden of proof on the intent element in the jury instructions. We disagree.

In addition to the pattern jury instruction for assault with a deadly weapon inflicting serious injury, the trial court gave the following instruction:

> Now, ladies and gentlemen, it is not necessary that the defendant had intended to—to have intended to inflict injury upon Melissa Ray. When a person operates a motor vehicle in a culpable or criminally negligent manner such that it constitutes a deadly weapon, thereby proximately causing injury to another, he commits an assault. Culpable or criminal negligence is defined as such recklessness or carelessness proximately resulting in injury or death as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others. *Operating a motor vehicle upon a highway within this state while impaired is culpable negligence.*

Defendant contends the highlighted language lessens the burden of proof upon the State to prove the intent necessary to convict him. However, the highlighted language is in accord with *McGill* as quoted *supra*. We can discern no abuse of discretion.

**[5]** Finally, defendant argues that the trial court erred in failing to arrest the felony serious injury by vehicle and two felony death by vehicle convictions because they are lesser included offenses for which he has been convicted and sentenced. Therefore, defendant contends that the trial court exposed him to double jeopardy in violation of both the federal and State constitutions. However, defendant made no objection or argument at trial expressing concern as to a purported double jeopardy violation. Accordingly, defendant has failed to preserve this issue for appellate review pursuant to binding precedent and North Carolina Rules of Appellate Procedure, Rule 10(b)(1), and it is dismissed. *See State v. Madric*, 328 N.C. 223, 231, 400 S.E.2d 31, 36 (1991) (citations omitted); *see also* N.C. R. App. P. 10(b)(1) (2007). *Cf. State v. Ezell*, 159 N.C. App. 103, 105-06, 582 S.E.2d 679, 682 (2003) (addressing the merits of the defendant's argument after explaining that, "[a]lthough defendant did not raise his double jeopardy argument using those exact words, the substance of the argument was sufficiently presented and, more importantly, addressed by the trial court in finalizing its instructions to the jury.").

For the reasons set forth above, we hold no error in part and we dismiss in part.

No error in part; Dismissed in part.

Judges STEPHENS and STROUD concur.