IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-707

Filed 2 July 2025

Wake County, No. 21 CR 732612-910

STATE OF NORTH CAROLINA

v.

JOHN AKBAR VENABLE, Defendant.

Appeal by Defendant from judgment entered 9 August 2023 by Judge G. Bryan Collins in Wake County Superior Court. Heard in the Court of Appeals 8 April 2025.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Kathryne E. Hathcock, for the State.*

*Stephen G. Driggers for Defendant.*

GRIFFIN, Judge.

Defendant John Akbar Venable appeals from the trial court's judgment entered after a jury found him guilty of felony death by vehicle and driving while impaired. Defendant raises four issues on appeal. Defendant contends the trial court erred by (1) denying his Motion to Dismiss for insufficient evidence; (2) admitting expert testimony of retrograde extrapolation; and (3) declining to give the entire civil pattern jury instruction on intervening negligence. Defendant also argues he received ineffective assistance of counsel. We hold the trial court did not err, and Defendant did not receive ineffective assistance of counsel.

## I. Factual and Procedural Background

This case arises from a car crash resulting in the death of Lee Venable in Raleigh, North Carolina. The evidence presented at trial tended to show as follows:

Around 7:26 p.m. on 2 August 2021, Defendant crashed his car into a tree at Old Wake Forest Road and Forest Oaks Drive in Raleigh. Defendant's wife, Mrs. Venable, was in the passenger seat of the vehicle. Seth Wood witnessed Defendant drive off Old Wake Forest Road in his red Kia Rio. Defendant crashed into a tree seconds later. Mr. Wood immediately called 911 and went to assist Defendant and Mrs. Venable. Defendant's vehicle was severely damaged and both airbags were deployed. Defendant exited the vehicle to check on Mrs. Venable. Mr. Wood observed Defendant's balance was poor, his speech was difficult to understand, and he appeared disoriented. Defendant walked a short distance away from the car and lay down on the grass while several residents of nearby houses tended to Mrs. Venable. Mr. Wood found Mrs. Venable's oxygen tank behind the passenger seat and attached it to her nose.

Mary Gerow, a registered trauma nurse, was one of the people to help. Ms. Gerow found Mrs. Venable unconscious and potentially not breathing. Ms. Gerow performed CPR on Mrs. Venable until EMS arrived. During this time, Ms. Gerow observed an odor of alcohol on Defendant.

Officer Jenks responded to the scene shortly after the crash. Mr. Wood explained to Officer Jenks what he had witnessed leading up to the crash and indicated Defendant had been driving. Ms. Gerow told Officer Jenks Defendant

smelled like alcohol. Officer Jenks and Officer Daniel Egan searched Defendant's vehicle and found five empty airplane bottles of E&J brandy. Local ABC store surveillance video footage later revealed Defendant purchased eight airplane bottles of E&J brandy and one airplane bottle of Fireball whiskey just after 5:00 p.m. on the day of the crash. Also, inside Defendant's vehicle, officers found Food Lion grocery bags and three Food Lion receipts, two of which were time stamped around an hour prior to the crash. One of the grocery bags contained raw chicken breast.

Paramedic Mark Underhill of Wake County EMS responded to the scene and treated Defendant for chest pain. He found Defendant alert and aware of the situation he was in. Defendant admitted he drank "a few beers" and claimed his wife had "grabbed [his] face," causing him to crash. Defendant and Mrs. Venable were transported to Wake Med Hospital for treatment. Mrs. Venable died at the hospital from blunt force trauma as a result of her injuries in the crash.

At the hospital, Defendant told Officer Egan he had consumed E&J brandy and Fireball whiskey. Defendant stated he drank one of the airplane bottles around forty-five minutes prior to driving. Officer Egan later contacted the witnesses present at the scene. Ms. Gerow stated she "smelled a strong odor of alcohol on [Defendant]," and Mr. Wood stated Defendant was "generally incoherent." After investigating the incident, and through his own observations, Officer Egan believed Defendant was appreciably impaired at the time of the crash due to alcohol consumption.

While at the hospital, a blood sample was collected from Defendant for medical

purposes at 8:37 p.m. The blood test reflected an alcohol concentration of 0.0883 grams of alcohol per 100 milliliters of blood. Later that evening, Defendant consented to a chemical analysis blood test, and at 10:43 p.m., a second blood sample was collected from Defendant. The test revealed an estimated alcohol concentration of 0.05 grams of alcohol per 100 milliliters of blood.

Dr. Richard Waggoner, a forensic chemist for the Raleigh-Wake County Bureau of Identification, performed a retrograde extrapolation analysis to determine Defendant's blood alcohol concentration at the time of the accident. Dr. Waggoner extrapolated Defendant's blood alcohol concentration was 0.1078 grams of alcohol per 100 milliliters of blood at the time of the crash.

On 29 November 2021, Defendant was indicted for felony death by vehicle and driving while impaired. Defendant's case came on for trial on 7 August 2023 in Wake County Superior Court.

At trial, Defendant requested the jury receive a civil intervening negligence instruction. A portion of the instruction was given to the jury. On 9 August 2023, the jury found Defendant guilty of both driving while impaired and felony death by motor vehicle. Defendant timely appeals.

## II. Analysis

Defendant contends the trial court erred by (1) denying his Motion to Dismiss for insufficient evidence; (2) admitting expert testimony of retrograde extrapolation; and (3) declining to give the entire civil pattern jury instruction on intervening

negligence. Defendant also argues he received ineffective assistance of counsel.

## A. Motion to Dismiss

Defendant argues the trial court erred by denying his Motion to Dismiss for insufficient evidence. Specifically, Defendant contends Officer Egan's opinion that Defendant was "appreciably impaired" at the time of the crash was unsupported by the evidence. We disagree.

We review the denial of a motion to dismiss for insufficient evidence de novo. *State v. Tucker*, 380 N.C. 234, 236, 867 S.E.2d 924, 927 (2022) (citation and internal marks omitted)). "In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." *Id.* at 237, 867 S.E.2d at 927. If there is substantial evidence to support each element of the charged crime, the trial court properly denied the motion to dismiss. *Id.* at 236, 867 S.E.2d at 927. Substantial evidence is more than a scintilla of evidence. *Id.* at 237, 867 S.E.2d at 927.

To be found guilty of driving while impaired, "the State must prove beyond a reasonable doubt" the defendant drove a vehicle "upon a public vehicular area" (1) while appreciably impaired "*or* (2) after having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more." *State v. Narron*, 193 N.C. App. 76, 79 666 S.E.2d 860, 863 (2008) (citation and internal

marks omitted) (emphasis added); N.C Gen. Stat. § 20-138.1(a) (2023). Notably, these are two "separate, independent, and distinct ways" to be convicted of driving while impaired. *State v. Watson*, 286 N.C. App. 143, 149, 879 S.E.2d 355, 360 (2022). Thus, the jury may convict a person of driving while impaired based on appreciable impairment "without proof of the person's blood alcohol concentration." *Id.* Or "[t]he jury may independently convict a person of driving while impaired for driving with an alcohol concentration of 0.08 or more if the State proves that the person's blood alcohol concentration was 0.08 or more." *Id.* Here, there was sufficient evidence to convict Defendant under either prong.

### 1. *Appreciable Impairment*

A person is appreciably impaired when their impairment can be "recognized and estimated." *State v. Harrington*, 78 N.C. App. 39, 45, 336 S.E.2d 852, 855 (1985).

"[I]t is a well-settled rule that a lay person may give his opinion as to whether a person is intoxicated so long as that opinion is based on the witness's personal observation." *State v. Rich*, 351 N.C. 386, 398, 527 S.E.2d 299, 306 (2000) (citation omitted). This Court has held that "[a]n officer's opinion that a defendant is appreciably impaired is competent testimony and admissible evidence when it is based on the officer's personal observation of an odor of alcohol and of faulty driving *or other evidence of impairment*." *State v. Gregory*, 154 N.C. App. 718, 721, 572 S.E.2d 838, 840 (2002) (emphasis added).

Here, Officer Egan did not personally observe an odor of alcohol on Defendant,

but he did observe "other evidence of impairment." *Id.* *See Rich*, 351 N.C. at 399, 527 S.E.2d 299 at 306 (holding an officer's opinion sufficient where it was not solely based on the "odor of alcohol, but also on his investigation of the accident and upon his experience enforcing traffic laws and dealing with intoxicated drivers").

Here, Officer Egan personally observed the collision scene, the roadway marks and Defendant's vehicle found in the trees; found five empty E&J brandy bottles inside Defendant's vehicle; and spoke with Defendant at the hospital. Defendant admitted to Officer Egan he had been drinking before driving. Thus, we hold Officer Egan's personal observations constitute "other evidence of impairment" sufficient to support his opinion testimony.

Moreover, the State's evidence was not limited to Officer Egan's opinion. The State presented ample evidence to support Defendant's impairment at the time of the crash. *See Rich*, 351 N.C. at 398–99, 527 S.E.2d at 306 (holding evidence sufficient to support impairment where an officer "observed the collision scene[,] observed [the] defendant at the hospital, [] two witnesses testified that they saw [the] defendant's car going seventy mph around a curve just before the collision[,] and other witnesses testified as to [the] defendant's odor of alcohol"); *State v. Hewitt*, 263 N.C. 759, 764, 140 S.E.2d 241, 244 (1965) ("The fact that a motorist has been drinking, when considered in connection with faulty driving such as following an irregular course on the highway or other conduct indicating an impairment of physical or mental faculties, is sufficient *prima facie* to show a violation of [section] 20-138.[1(a)]."

(citation omitted)).

Here, in addition to Officer Egan's testimony, the jury heard Mr. Wood testify Defendant's balance was poor, his speech was difficult to understand, and he appeared disoriented. Ms. Gerow stated Defendant smelled like alcohol, and Officer Jenks explained what he observed and collected at the scene. Thus, we hold there was sufficient evidence presented to the jury to support Defendant being appreciably impaired at the time of the crash.

### 2. *Alcohol Concentration*

In addition to the evidence presented to support Defendant's appreciable impairment, the State presented evidence of Defendant's alcohol concentration at the time of the crash. "The results of a chemical analysis are sufficient to prove a person's blood alcohol concentration." *Watson*, 286 N.C. App. at 150, 879 S.E.2d at 361 (citing N.C. Gen. Stat. § 20-138.1(a)(2)).

Dr. Waggoner extrapolated Defendant's blood alcohol concentration was 0.1078 grams of alcohol per 100 milliliters of blood at the time of the crash. Dr. Waggoner based his analysis on Defendant's blood drawn at the hospital at 8:37 p.m. and 10:43 p.m., Defendant's own statements, and the evidence found at the scene. The crash occurred at 7:26 p.m., and Defendant's blood sample taken at 8:37 p.m., just over an hour after the crash, revealed an alcohol concentration of 0.0883 grams per 100 milliliters of blood. *See State v. Patterson*, 209 N.C. App. 708, 714, 708 S.E.2d 133, 137 (2011) (holding it was not error to admit a blood sample taken three hours

after the defendant's arrest). Thus, Defendant's blood alcohol concentration was sufficient in and of itself to convict Defendant of driving while impaired. N.C. Gen. Stat. § 20-138.1(a)(2).

Accordingly, we hold there was sufficient evidence presented to support Defendant's DWI conviction on grounds of appreciable impairment and blood alcohol concentration. As a result, the trial court did not err by denying Defendant's Motion to Dismiss.

## B. Retrograde Extrapolation

Defendant alleges the trial court plainly erred by admitting expert testimony of retrograde extrapolation. Specifically, Defendant contends Dr. Waggoner's testimony regarding Defendant's blood alcohol concentration at the time of the crash was unreliable because he made "critical assumptions" unsupported by the record. We disagree.

For this Court to hold a trial court plainly erred, the defendant must satisfy a three-factor test. *State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024). First, the defendant must demonstrate a "fundamental error occurred at trial." *Id.* (citing *State v. Lawrence,* 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012)). Second, "that the error had a 'probable impact' on the outcome, meaning that 'absent the error, the jury probably would have returned a different verdict.'" *Id.* (quoting *Lawrence*, 365 N.C. at 518–19, 723 S.E.2d at 334). Third, "that the error is an 'exceptional case' that warrants plain error review . . . showing that the error seriously affects 'the fairness,

integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334).

Rule 702(a) of the North Carolina Rules of Evidence "'incorporates the standard from the *Daubert* line of cases' in federal evidentiary jurisprudence." *State v. Babich*, 252 N.C. App. 165, 167, 797 S.E.2d 359, 361-62 (2017) (quoting *State v. McGrady*, 368 N.C. 880, 888, 787 S.E.2d 1, 8 (2016)). Rule 702(a) permits an expert witness to testify in the form of an opinion if: "(1) [t]he testimony is based upon sufficient facts or data[;] (2) [t]he testimony is the product of reliable principles and methods[;] and (3) [t]he witness has applied the principles and methods reliably to the facts of the case." N.C. R. Evid. 702(a) (1–3) (2023).

When the reliability of expert testimony is challenged on appeal, we cannot consider "data or theories . . . which were neither before the trial court when the expert opinion was admitted nor made part of the record on appeal." *State v. Gray*, 259 N.C. App. 351, 351–52, 815 S.E.2d 736, 738 (2018).

On appeal, Defendant does not dispute that retrograde extrapolation is a widely acceptable method of proving blood alcohol content. *See State v. Cook*, 362 N.C. 285, 293, 661 S.E.2d 874, 879 (2008) ("North Carolina courts have consistently regarded blood alcohol retrograde extrapolation as the domain of expert witnesses."); *State v. Davis*, 142 N.C. App. 81, 90, 542 S.E.2d 236, 241 (2001) ("We have accepted the reliability of extrapolation evidence since 1985." (citation omitted)). Rather, Defendant contends Dr. Waggoner's opinion that Defendant was in a post-absorptive

state with a blood alcohol concentration of 0.1078 at the time of the crash was unreliable because his analysis "was not properly tied to the facts of the particular case." Defendant contends Dr. Waggoner assumed, based on information unsupported by the record, Defendant was drinking on an empty stomach, and that the crash occurred fifty-one minutes after his last drink.

When an expert performs a retrograde extrapolation analysis, the subject needs to be in a "post-absorptive or post-peak state–meaning that alcohol is no longer entering the subject's bloodstream and thus [his] blood alcohol level is declining." *Babich*, 252 N.C. App. at 168, 797 S.E.2d at 362. Factors, "such as when the person last consumed alcohol (and how much was consumed), and whether the person consumed any food that could delay the alcohol's absorption into the bloodstream" can impact whether a person is in a post-absorptive state. *Id.* at 169, 797 S.E.2d at 362.

This Court has held "when an expert witness offers a retrograde extrapolation opinion based on an assumption that the defendant is in a post-absorptive or post-peak state, that assumption must be based on at least some underlying facts[.]" *Id.* at 172, 797 S.E.2d at 364. "This might come from the defendant's own statements during the initial stop, from the arresting officer's observations, from other witnesses, or from circumstantial evidence that offers a plausible timeline for the defendant's consumption of alcohol." *Id.* "When there are at least some facts that can support the expert's assumption that the defendant is post-peak or post-absorptive, the issue

then becomes one of weight and credibility, which is the proper subject for cross-examination or competing expert witness testimony." *Id.* The weight and credibility of the expert testimony is for the jury to decide. *State v. Dew*, 225 N.C. App. 750, 760, 738 S.E.2d 215, 222 (2013) (citation omitted).

Defendant relies on *State v. Babich*, a case where this Court held the trial court abused its discretion by admitting retrograde extrapolation testimony because "the opinion of the State's expert was not sufficiently tied to the particular facts of [the] case[.]" *Babich*, 252 N.C. App. at 167, 797 S.E.2d at 361. There, the expert "conceded [] she had no factual information in [the] case from which she could assume that [the] [defendant] was in a post-absorptive state." *Id.* at 169, 797 S.E.2d at 362. She admitted she had not been provided with any facts or data "whatsoever" "about when [the defendant's] last consumption of alcohol was, or whether [the] [defendant] consumed food . . . prior[.]" *Id.*

Here, unlike in *Babich*, Dr. Waggoner considered several facts in making his calculations and in determining whether Defendant was in a post-absorptive state at the time of the crash. Dr. Waggoner explained he based his analysis on the blood drawn at the hospital at 8:37 p.m. and 10:43 p.m., Defendant's own statements, and the evidence found at the scene. Defendant purchased nine airplane bottles of alcohol just after 5:00 p.m. Defendant admitted he drank three airplane bottles, but seven were found empty. Defendant also admitted he drank an airplane bottle forty-five minutes before driving. Defendant left Food Lion at 6:35 p.m., and the crash occurred

at 7:26 p.m. Defendant did not eat or drink anything after the crash, and there was no evidence that he had eaten any of the groceries in the car prior to the crash. Defendant's blood sample, taken at 8:37 p.m., just over an hour after the crash, revealed an alcohol concentration of 0.0883 grams of alcohol per 100 milliliters of blood. Defendant's second blood sample, taken at 10:43 p.m., revealed an alcohol concentration of 0.05 grams of alcohol per 100 milliliters of blood.

Thus, because Dr. Waggoner based his opinion on underlying facts and explained to the jury what those underlying facts were, we hold the trial court did not err by admitting Dr. Waggoner's opinion testimony.

Moreover, even if it was error to admit Dr. Waggoner's testimony, it does not amount to plain error. Defendant has not shown a reasonable probability that had the alleged error not occurred, a different result would have been reached at trial. *Reber*, 386 N.C. at 158, 900 S.E.2d at 786. *See Babich*, 252 N.C. App. at 173, 797 S.E.2d at 365 (holding retrograde extrapolation testimony error but not prejudicial error because there was ample evidence presented to support the defendant's impairment outside of the challenged testimony); *State v. Taylor*, 165 N.C. App. 750, 758, 600 S.E.2d 483, 489 (2004) (holding "even if the admission of [the] [expert's] testimony was error, the error was not prejudicial" because of the evidence presented to support the defendant's appreciable impairment under the first prong of section 20-138.1). *See also State v. Sigmon*, 74 N.C. App. 479, 482, 328 S.E.2d 843, 846 (1985) (rejecting the defendant's contention that an alcohol concentration of 0.06 must create

a presumption that the defendant is not impaired; "substantial evidence, separate and apart from [a] breathalyzer result" can support a conviction on grounds of appreciable impairment).

Here, like in *Babich* and in *Taylor*, as discussed in the section above, there was ample evidence presented to support Defendant's conviction on the basis of appreciable impairment, absent any testimony of Defendant's blood alcohol concentration at the time of the crash. Thus, we hold the trial court did not plainly err by admitting the testimony.

## C. Intervening Negligence Jury Instruction

Defendant argues the trial court plainly erred by failing to give the entire jury instruction on intervening negligence and did not include intervening negligence in its final mandate on the charge of felony death by motor vehicle. We disagree.

"The elements of felony death by vehicle are: (1) [the] defendant unintentionally causes the death of another; (2) while driving impaired as defined by N.C. Gen. Stat. §§ 20-138.1 or 20-138.2 [(2023)]; and (3) the impairment was the proximate cause of the death." *State v. Bailey*, 184 N.C. App. 746, 748, 646 S.E.2d 837, 839 (2007) (citing N.C. Gen. Stat. § 20-141.4(a1)).

In *State v. Bailey*, a felony death by vehicle case, the jury was instructed the defendant's negligence need not be the sole proximate cause. *Id.* at 749, 646 S.E.2d at 839. Intervening negligence is found where the negligence of another "break[s] the causal chain of the defendant's negligence[.]" *Id.* (citation and internal marks

omitted). If it does not break the causal chain, the defendant's act is still a proximate cause. *Id.* (citation omitted). Here, the trial court properly instructed the jury on proximate cause. The instructions provided:

> A proximate cause is . . . a cause without which the victim's death would not have occurred and one that a reasonably careful and prudent person could foresee would probably produce such injury or some similar injurious result. The defendant's act need not have been the last or nearest cause. It is sufficient if it concurred with some other cause acting at the same time which, in combination with it, proximately caused the victim's death.
>
> A natural and continuous sequence of causation may be interrupted or broken by the negligence of a second person. This occurs when a second person's negligence was not reasonably foreseeable by the first person and causes its own natural and continual sequence which interrupts, breaks, displaces, or supersedes the consequences of the first person's negligence. Under such circumstances, the negligence of the second person . . . insulates the negligence of the first person and would be the sole proximate cause of the incident.

The intervening negligence jury instruction sufficiently incorporated the necessary principles outlined in *Bailey*. Additionally, the trial court's final mandate on felony death by vehicle included the appropriate law on proximate cause.

Moreover, even if it was error for the court not to read the entire jury instruction, the error does not amount to plain error—the jury probably would not have returned a different verdict—based on the evidence presented to support Defendant's guilt. *Reber*, 386 N.C. at 158, 900 S.E.2d at 786. Here, ample evidence, including the testimony of two eyewitnesses, was presented to show Defendant drove

off the roadway into a tree while appreciably impaired and caused the single-vehicle crash that resulted in his wife's death.

We hold the trial court did not err in its jury instructions, but even if it did, it does not amount to prejudicial error.

## D. Ineffective Assistance of Counsel

Defendant argues he received ineffective assistance of counsel because his trial counsel failed to object to the testimony of Officer Egan and Dr. Waggoner, and because Defense counsel failed to object to the incomplete jury instruction. We disagree.

To challenge a conviction based on ineffective assistance of counsel, a defendant must establish that his counsel's conduct "fell below an objective standard of reasonableness." *State v. Braswell*, 312 N.C. 553, 561–62, 324 S.E.2d 241, 248 (1985) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). "[T]o meet this burden, the defendant must satisfy a two-part test." *Id.* at 562, 324 S.E.2d at 248. First, the defendant must prove that his "counsel's performance was deficient," such that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, the defendant must prove his counsel's performance was prejudicial, such that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

As held above, the challenged testimony was not error, nor was the lack of objection to the allegedly incomplete jury instruction on intervening negligence.

- 16 -

Thus, Defendant cannot meet the first prong of the ineffective assistance of counsel test and Defendant's argument fails.

### III.    Conclusion

We hold the trial court properly denied Defendant's Motion to Dismiss, properly admitted Dr. Waggoner's retrograde extrapolation analysis, and properly gave appropriate jury instructions on intervening negligence.  Additionally, we hold Defendant did not receive ineffective assistance of counsel.

NO ERROR.

Judges ZACHARY and FLOOD concur.