STATE OF NORTH CAROLINA v. WILLIAM DONOVAN WESTBROOK, DEFENDANT

No. COA05-149

(Filed 20 December 2005)

**1. Evidence— prior crimes or bad acts—driving while impaired—malice—remoteness**

The trial court did not err in a prosecution for second-degree murder, driving while impaired and other offenses by admitting evidence of defendant's prior conviction for driving while impaired on 24 April 1995, because: (1) our case law reveals that prior driving convictions of a defendant are admissible to show malice, and the showing of malice in a second-degree murder case is a proper purpose within the meaning of N.C.G.S. § 8C-1, Rule 404(b); and (2) although defendant contends the nine-year-old conviction was too remote to be relevant, the Court of Appeals has found older convictions to be admissible.

**2. Evidence— medical records—proper administration of justice**

The trial court did not err in a prosecution for second-degree murder, driving while impaired and other offenses by admitting defendant's medical records, because: (1) it was within the trial court's discretion to determine what is necessary for the proper administration of justice; and (2) the trial court did not abuse its discretion. N.C.G.S. § 8-53.

**3. Homicide— second-degree murder—motion to dismiss— sufficiency of evidence—malice**

The trial court did not err by denying defendant's motion to dismiss the charge of second-degree murder even though defendant contends there was insufficient evidence of malice, because: (1) it is only necessary for the State to prove that defendant had the intent to perform the act of driving in such a reckless manner as reflects knowledge that injury or death would likely result, thus evidencing depravity of mind; and (2) there was substantial

evidence from which the jury could infer malice, including that defendant drove with an alcohol concentration of 0.156, sped seventy-five to eighty miles per hour in a forty-five miles per hour zone, traveled in the opposite direction lane, ran a red light without attempting to brake or stop, and had notice as to the serious consequences of driving while impaired as a result of his nine-year-old driving while impaired conviction.

### 4. Appeal and Error— preservation of issues—failure to argue

The remaining assignments of error that defendant failed to argue are deemed abandoned under N.C. R. App. P. 28(b).

Appeal by Defendant from judgment entered 5 August 2004 by Judge W. Allen Cobb, Jr. in Superior Court, Onslow County. Heard in the Court of Appeals 1 November 2005.

*Attorney General Roy Cooper, by Special Counsel Isaac T. Avery, III, for the State.*

*Sofie W. Hosford, for defendant-appellant.*

WYNN, Judge.

" 'Second-degree murder is defined as the unlawful killing of a human being with malice but without premeditation and deliberation.' " *State v. Rick*, 342 N.C. 91, 98, 463 S.E.2d 182, 186 (1995) (quoting *State v. Phipps*, 331 N.C. 427, 457-58, 418 S.E.2d 178, 194 (1992)). In this case, Defendant contends that the State failed to prove the element of malice to support a conviction of second-degree murder. Because the evidence showed that Defendant drove with an alcohol concentration of 0.156; sped seventy-five to eighty miles per hour in a forty-five miles per hour zone; traveled in the opposite direction lane; ran a red light without attempting to brake or stop; and had notice as to the serious consequences of driving while impaired as a result of his nine-year-old driving while impaired conviction; we uphold his conviction for second-degree murder.

This matter arose out of a five-car collision resulting in the death of Bernadette Whitsett and serious injuries to several other individuals. The accident occurred at the intersection of Country Club Road and Western Boulevard in Jacksonville, North Carolina. In the first vehicle at the intersection, Mrs. Whitsett and her husband, Kenneth, stopped at a red light in the left turn lane. In the second vehicle,

Daniel Lewis stopped at the red light in the right lane. In the third vehicle, Samuel Cheatham stopped at the red light in the center lane. In the fourth vehicle, taxicab driver, Nathan Scott with a front-seat passenger traveled on Western Boulevard, and made a right turn on a green light to Country Club Road.

The fifth vehicle was described by Crystal Williams as she drove South on Country Club Road toward Western Boulevard. She testified that, a red pickup "came out of nowhere, and [] got pretty close to the back of the car, so it kind of startled me, and then he shot over into— there's really not a middle lane, but I guess you would say he made one and he went flying down Country Club." She testified that the red pickup was going seventy-five to eighty miles per hour in a forty-five miles per hour zone. Thereafter, she heard a collision but did not observe it, came to the intersection of Country Club Road and Western Boulevard, observed the accident and called 911.

Andrea Richmond also observed the fifth vehicle as she stopped for gas and drove onto Western Boulevard toward Country Club Road. At the intersection of Western Boulevard and Country Club Road, Ms. Richmond was in the left lane, next to the center turn lane, and had a green light. Approximately twenty to thirty-five feet from the intersection, she saw a red truck directly in front of her in the intersection. She testified that the red truck made no effort to stop at the red light, was going at least sixty miles per hour, went over a raise in the intersection, lost control, and "slammed into" the Whitsett vehicle which was "pushed several feet, yards, backwards and also spun backwards." The Whitsett vehicle then collided with the vehicles driven by Cheatham and Lewis.

Mr. Lewis also saw the red truck approach the intersection, very fast, and then "felt a jolt" as something hit his vehicle. Mr. Scott saw the red truck, in his rearview mirror, go "airborne" and hit his taxicab in the rear. The impact broke the driver's seat, and Mr. Scott lost control of the car.

Paramedics William Pollock and John Smith arrived on the scene at 11:29 p.m., assessed the scene, and called for two additional paramedic trucks, two helicopters, and fire department vehicles with extrication equipment.

Mrs. Whitsett was dead upon the paramedics' arrival. Mr. Whitsett sustained a corneal abrasion to his left eye and abrasions on his face. Mr. Cheatham sustained a hole through the side of his face from

under his right eye to the corner of his mouth, on the left side, collapsed lungs, and a dislocated left shoulder.

The paramedics found Defendant William Donovan Westbrook in the driver's seat of the red pickup with his legs trapped due to the extensive damage to the front of the truck. Paramedic Smith described Defendant as "somewhat combative, not completely belligerent . . . he sort of fought us[.]" Defendant was removed from the vehicle, and Smith asked him if he had been drinking. Defendant responded in the affirmative and said he had "a lot" to drink.

Upon arrival at Onslow Memorial Hospital, emergency room nurse Linda Royston testified that Defendant was combative, uncooperative, and complained that "his family jewels were hurting." She asked him if he had been drinking and he stated he "had a lot to drink." She took a blood sample from Defendant, and then he was transferred via helicopter to Pitt Memorial Hospital.

Officer Earl Burkhart, an accident reconstructionist with the Jacksonville Police Department, testified that he observed no braking or skid marks for any of the vehicles. The State also introduced a 1995 conviction of Defendant for driving while impaired.

A jury found Defendant guilty of second-degree murder, driving while impaired, failing to stop for red light, reckless driving to endanger, driving left of center, and exceeding the posted speed. The trial court sentenced Defendant to imprisonment terms of 189 to 236 months imprisonment for the second-degree murder charge, twenty-four months for the driving while impaired charge, and thirty days for the remaining charges.

---

On appeal to this Court, Defendant argues that the trial court erred in: (1) admitting evidence of his prior conviction; (2) admitting his medical records; and (3) denying his motion to dismiss the second-degree murder charge. We disagree.

[1] First, Defendant argues that the trial court erred in admitting evidence of his prior conviction for driving while impaired because it is not probative evidence of malice. We disagree.

Section 8C-1, Rule 404(b) of the North Carolina General Statutes provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in

conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2004). "[E]vidence of other offenses is admissible so long as it is relevant to any fact or issue other than the character of the accused." *State v. Stager*, 329 N.C. 278, 302, 406 S.E.2d 876, 889 (1991) (quoting *State v. Coffey*, 326 N.C. 268, 278, 389 S.E.2d 48, 54 (1990) (emphasis omitted)).

The trial court admitted, over Defendant's objection, a certified copy of Defendant's judgment and conviction for driving while impaired, with a conviction date of 24 April 1995. The trial court also admitted testimony of the Onslow County Deputy Clerk of Superior Court establishing Defendant's convictions on file. The State argued that the evidence of Defendant's driving while impaired conviction was relevant to show intent, i.e. malice, to support the second-degree murder charge. Defendant contends that the convictions alone, without evidence of the facts and circumstances supporting them, are not relevant to malice under Rule 404(b).

Under our caselaw, "prior driving convictions of a defendant are admissible to show malice, and the showing of malice in a second-degree murder case is a proper purpose within the meaning of Rule 404(b)." *State v. Goodman*, 149 N.C. App. 57, 72, 560 S.E.2d 196, 206 (2002) (Greene, J., dissenting), *rev'd*, 357 N.C. 43, 577 S.E.2d 619 (2003) (per curium as stated in dissenting opinion); *see, e.g., State v. Rich*, 351 N.C. 386, 400, 527 S.E.2d 299, 307 (2000) (trial court properly admitted the defendant's driving record containing previous convictions because this evidence was relevant to establish the defendant's "depraved mind" on night of collision); *State v. Edwards*, 170 N.C. App. 381, 384-86, 612 S.E.2d 394, 396-97 (2005) (trial court properly admitted the defendant's driving record listing prior convictions for driving while impaired and driving while license revoked as this evidence was relevant to establish malice for a second-degree murder charge). Thus, this contention is without merit.

Defendant also argues that the nine-year-old conviction was too remote to be relevant. As this Court has found older convictions to be admissible, this argument is without merit. *See, e.g., Rich*, 351 N.C. at 400, 527 S.E.2d at 307 (prior conviction dating back nine years admissible); *State v. Miller*, 142 N.C. App. 435, 440, 543 S.E.2d 201, 205

(2001) (prior convictions over fifteen years old admissible); *State v. McAllister*, 138 N.C. App. 252, 258, 530 S.E.2d 859, 863, *appeal dismissed*, 352 N.C. 681, 545 S.E.2d 724 (2000) (seven year-old conviction for driving while intoxicated admissible to establish malice); *State v. Grice*, 131 N.C. App. 48, 53-54, 505 S.E.2d 166, 169-70 (1998), *disc. review denied*, 350 N.C. 102, 533 S.E.2d 473 (1999) (prior convictions over ten years old admissible).

**[2]** Next, Defendant argues that the trial court erred in admitting his medical records, as he did not waive his doctor-patient privilege. We disagree.

Section 8-53 of the North Carolina General Statutes provides in pertinent part:

> Confidential information obtained in medical records shall be furnished only on the authorization of the patient . . . . Any resident or presiding judge in the district, either at the trial or prior thereto, . . . may, subject to G.S. 8-53.6, compel disclosure if in his opinion disclosure is necessary to a proper administration of justice.

N.C. Gen. Stat. § 8-53 (2004). The statute affords the trial judge wide discretion in determining what is necessary for a proper administration of justice. *State v. Efird*, 309 N.C. 802, 806, 309 S.E.2d 228, 231 (1983); *State v. Sisk*, 123 N.C. App. 361, 367, 473 S.E.2d 348, 353 (1996), *aff'd in part, appeal dismissed in part*, 345 N.C. 749, 483 S.E.2d 440 (1997). In overruling Defendant's objection to the admission of his medical records, the trial court stated "I'm going to compel the disclosure of the records, because I think it's necessary for the proper administration of justice." It was in the trial court's discretion to determine what is necessary for the proper administration of justice. *Id.* As we find no abuse of discretion, we overrule Defendant's assignment of error.

**[3]** Lastly, Defendant argues that the trial court erred in denying his motion to dismiss the second-degree murder charge, as the State failed to prove the element of malice. We disagree.

When reviewing a motion to dismiss, we view "the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Morgan*, 359 N.C. 131, 161, 604 S.E.2d 886, 904 (2004) (citing *State v. Gladden*, 315 N.C. 398, 430, 340 S.E.2d 673, 693, *cert. denied*, 479 U.S. 871, 93 L. Ed. 2d 166 (1986)), *cert. denied*, —— U.S. ——, 163 L. Ed. 2d 79 (2005). If we find that "sub-

stantial evidence exists to support each essential element of the crime charged and that defendant was the perpetrator, it is proper for the trial court to [have denied] the motion." *Id.* (citing *State v. Malloy*, 309 N.C. 176, 178, 305 S.E.2d 718, 720 (1983)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984) (citing *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980)).

" 'Second-degree murder is defined as the unlawful killing of a human being with malice but without premeditation and deliberation.' " *Rick*, 342 N.C. at 98, 463 S.E.2d at 186 (quoting *Phipps*, 331 N.C. at 457-58, 418 S.E.2d at 194). Whether the State has carried its burden of proof of malice depends on the factual circumstances of each case. *State v. Locklear*, 159 N.C. App. 588, 591, 583 S.E.2d 726, 729 (2003), *aff'd per curiam*, 359 N.C. 63, 602 S.E.2d 359 (2004); *State v. McBride*, 109 N.C. App. 64, 67, 425 S.E.2d 731, 733 (1993). In *Rich*, our Supreme Court addressed the precise issue of malice as raised by Defendant. 351 N.C. 386, 527 S.E.2d 299. Our Supreme Court adopted the position that, ". . . wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty and deliberately bent on mischief . . ." are examples, any one of which may provide the malice necessary to convict a defendant of second-degree murder. *Id.* at 391, 527 S.E.2d at 302 (citation omitted).

Our Supreme Court has approved the following definition of "deliberately bent on mischief," one of the attitudinal indices of legal malice:

> [The term deliberately bent on mischief] connotes conduct as exhibits conscious indifference to consequences wherein probability of harm to another within the circumference of such conduct is reasonably apparent, though no harm to such other is intended. [It] connotes an entire absence of care for the safety of others which exhibits indifference to consequences. It connotes conduct where the actor, having reason to believe his act may injure another, does it, being indifferent to whether it injures or not. It indicates a realization of the imminence of danger, and reckless disregard, complete indifference and unconcern for probable consequences. It connotes conduct where the actor is conscious of his conduct, and conscious of his knowledge of the existing conditions that injury would probably result, and that, with reckless indifference to consequences, the actor con-

sciously and intentionally did some wrongful act to produce injurious result.

*Locklear*, 159 N.C. App. at 591-92, 583 S.E.2d at 729 (quoting *Rich*, 351 N.C. at 394, 527 S.E.2d at 303). Further, our Supreme Court announced that any one of the descriptive phrases provided in the malice instruction helps define malice and does not constitute "elements" of malice. *Id.* at 592, 583 S.E.2d at 729. Thus, the jury may infer malice from any one of those attitudinal examples. *Rich*, 351 N.C. at 393, 527 S.E.2d at 303. It is necessary for the State to prove only that Defendant had the intent to perform the act of driving in such a reckless manner as reflects knowledge that injury or death would likely result, thus evidencing depravity of mind. *See Locklear,* 159 N.C. App. at 592, 583 S.E.2d at 729.

In the instant case, the State's evidence on the issue of malice tended to show that Defendant was driving while impaired with an alcohol concentration of 0.156, which is above the legal limit, and that Defendant was on notice as to the serious consequences of driving while impaired as a result of his prior driving while impaired conviction which occurred nine years earlier. Also, the State's evidence tended to show that Defendant was speeding, traveling seventy-five to eighty miles per hour in a forty-five miles per hour speed zone, crossing the center lane, traveling in a lane in the opposite direction, and running a red light without attempting to brake or stop.

Defendant contends that his speeding and driving under the influence do not establish depravity of the mind. But the State also presented evidence that Defendant crossed the center lane and ran a red light without attempting to stop. Examining the evidence in the light most favorable to the State, there was substantial evidence presented from which the jury could find malice and each of the other essential elements of second-degree murder. *See, e.g., State v. Snyder*, 311 N.C. 391, 392-93, 317 S.E.2d 394, 395 (1984) (second-degree murder charge proper where the defendant was driving while impaired with an alcohol concentration of 0.24, passed in a no passing zone, and ran a red light); *Locklear*, 159 N.C. App. at 592, 583 S.E.2d at 729 (second-degree murder charge proper where the defendant was driving while impaired with an alcohol concentration of 0.08, and the defendant was on notice as to the serious consequences of driving while impaired as a result of his four-year-old driving while impaired conviction); *State v. McDonald*, 151 N.C. App. 236, 243, 565 S.E.2d 273, 277, *disc. review denied*, 356 N.C. 310, 570 S.E.2d 892 (2002) (second-degree murder charge proper where the defend-

ant was driving while impaired with an alcohol concentration of 0.156, had a prior conviction of consuming alcohol while under the age of twenty-one, and was driving without looking at the road in order to pick up a lit cigarette he had dropped). Thus, the trial court did not err in denying Defendant's motion to dismiss the charge of second-degree murder.

**[4]** Defendant failed to argue his remaining assignments of error; therefore, they are deemed abandoned. N.C. R. App. P. 28(b).

Affirmed.

Judges McGEE and GEER concur.