An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-905
NORTH CAROLINA COURT OF APPEALS

Filed: 17 June 2014

STATE OF NORTH CAROLINA

   v.

KENNETH MYLES LEWIS, JR.

Rowan County
Nos. 10 CRS 58246, 11 CRS 3083

Appeal by defendant from judgment entered 14 February 2013 by Judge W. Erwin Spainhour in Rowan County Superior Court. Heard in the Court of Appeals 6 February 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Kathryne E. Hathcock, for the State.*
>
> *Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse, Jr., for defendant-appellant.*

CALABRIA, Judge.

Kenneth Myles Lewis, Jr. ("defendant") appeals from a judgment entered upon jury verdicts finding him guilty of second degree murder and expired registration. We find no error.

## I. Background

On 6 December 2010, defendant and four of his employees were engaged in tree removal work in a residential area.

Defendant left the work site at one point for a few hours. When defendant returned, employee Douglas Sander ("Sander") noticed some pills packaged in plastic on the dashboard of defendant's Chevrolet Silverado pick-up truck ("the truck"). When the work was completed, defendant attempted to drive his employees to another work site. However, defendant "kept going off the road," and almost hit several mailboxes before leaving the subdivision. Defendant's employees convinced defendant to allow Sander to drive the truck to the next work site.

After completing work and leaving the second work site, defendant and Sander argued, and defendant ultimately punched Sander in the head. Sander stopped driving, exited the truck, and walked to a nearby gas station. Defendant moved to the driver's seat and dropped off the remaining employees before proceeding west on Highway 150.

Several minutes later, defendant crossed into the lane of oncoming traffic and collided head-on with Carolyn Wilson's ("Mrs. Wilson") Toyota Prius ("the Prius"). After Emergency Medical Services personnel arrived, they removed Mrs. Wilson from the severely damaged Prius. Mrs. Wilson was subsequently transported by AirCare helicopter to Carolinas Medical Center, where she later died as a result of the injuries she sustained

in the collision.

Paramedics found defendant standing in a field beside the truck several feet from the roadway. Paramedic Katie Smith ("Smith") detected an odor of alcohol from defendant, who was unsteady on his feet, talking loudly, and cursing. When Smith informed defendant that the other individual involved in the collision had been seriously injured, defendant stated that he did not care. Defendant admitted to having three drinks and requested cigarettes and food while he was transported to the hospital. During Smith's attempts to treat defendant, he was belligerent and shouted and cursed at her.

Trooper Malcolm Eason ("Trooper Eason") of the North Carolina State Highway Patrol ("NCSHP") responded to the collision. While he spoke to defendant in the back of the ambulance, Trooper Eason detected an odor of alcohol, and noticed that defendant appeared disoriented. Trooper Eason stated that defendant's speech was "very gargled [sic], very slurred," and that he formed the opinion that defendant's mental and physical faculties were appreciably impaired. NCSHP Trooper David Deal ("Trooper Deal"), spoke with defendant in the hospital. Defendant told Trooper Deal that "he was going down the road and someone ran him into a ditch." Trooper Deal also

detected a "moderate to strong" odor of alcohol on defendant's breath, and formed the opinion that defendant's mental and physical faculties were impaired. Subsequently, a chemical analysis of defendant's blood by the North Carolina State Bureau of Investigation ("the SBI") revealed the presence of Xanax and a reported alcohol concentration of .02. The SBI calculated defendant's blood alcohol concentration using the retrograde extrapolation method and determined that defendant's blood alcohol concentration at the time of the collision was either .07 or .08.

Defendant was arrested and charged with felony death by vehicle, driving while impaired, expired registration, expired inspection, driving left of center, and second degree murder. The State later voluntarily dismissed the charge of felony death by vehicle.

On 14 February 2013 the jury returned verdicts finding defendant guilty of second degree murder, driving while impaired, and expired registration. The trial court arrested judgment on the driving while impaired offense, and sentenced defendant to a minimum of 238 months and a maximum of 295 months in the custody of the North Carolina Division of Adult Correction. Defendant appeals.

## II. Driving Record

Defendant argues that the trial court erred in admitting evidence of his certified driving history in violation of Rule 404(b). We disagree.

"We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion." *State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012). An abuse of discretion occurs only "where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Campbell*, 359 N.C. 644, 673, 617 S.E.2d 1, 19 (2005) (citation omitted).

Rule 404(b) of the North Carolina Rules of Evidence provides that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2013). Rule 403 states that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

N.C. Gen. Stat. § 8C-1, Rule 403 (2013). Our Courts have held that "prior driving convictions of a defendant are admissible to show malice, and the showing of malice in a second-degree murder case is a proper purpose within the meaning of Rule 404(b)." *State v. Westbrook*, 175 N.C. App. 128, 132, 623 S.E.2d 73, 76 (2005) (quotations and citations omitted); *see State v. Rich*, 351 N.C. 386, 400, 527 S.E.2d 299, 307 (2000) (prior speeding convictions admissible to show "defendant knew and acted with a total disregard of the consequences, which is relevant to show malice").

In the instant case, although the State specifically offered defendant's driving history for the purpose of showing malice, the trial court conducted a review of defendant's driving history and allowed the parties to redact entries that were entered in duplicate or otherwise potentially prejudicial or confusing.

Defendant's driving history included several traffic violations, including charges for speeding, reckless driving, and hit and run offenses in the months prior to the fatal December 2010 collision. Even with the redacted driving record that the trial court ultimately admitted, defendant's knowledge that he "acted with a total disregard of the consequences" was

evidence of a high degree of recklessness. *Rich*, 351 N.C. at 400, 527 S.E.2d at 307. Therefore, the trial court admitted defendant's driving history for the proper purpose of showing malice pursuant to Rule 404(b). In addition, because the trial court allowed the redactions and considered defendant's violations in the months prior to the December 2010 collision, the trial court's decision to admit the evidence based upon the probative value of the redacted driving record outweighing any prejudicial effect was not "manifestly unsupported by reason" or "so arbitrary that it could not have been the result of a reasoned decision." *Campbell*, 359 N.C. at 673, 617 S.E.2d at 19.

Assuming, *arguendo*, that the admission of defendant's driving record constituted error, any error was harmless. The State presented evidence from several witnesses indicating that although defendant had notice from his employees that he was too impaired to drive, he nevertheless proceeded to drive despite being under the influence of both Xanax and alcohol, and he was appreciably impaired at the time of the collision. When paramedics told defendant that the other driver in the collision was severely injured, his response was that he did not care. Since the State presented substantial evidence of malice besides

defendant's driving record, defendant has failed to show that the admission of his driving record prejudiced his defense.

### III. Jury Instruction

Defendant's next argument is that the trial court committed plain error by instructing the jury on second degree murder and involuntary manslaughter without sufficiently defining culpable negligence. Specifically, defendant argues that the trial court failed to define the phrase "culpable negligence" by drawing a sufficient distinction between the degrees of recklessness required for each charge. We disagree.

As an initial matter, since defendant did not object or request additional jury instructions on the definitions of recklessness or culpable negligence, our review is limited to determining whether there was plain error. Plain error arises when the error is "'so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]'" *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation omitted). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

In *State v. Rich*, the defendant also drove impaired and was on trial for second degree murder. The trial court explained to the jury that if the defendant's actions were so "inherently dangerous to human life [and were] done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief," then the defendant acted with malice. 351 N.C. at 396, 527 S.E.2d at 304. The defendant appealed the second degree murder judgment. On appeal, the defendant argued, *inter alia*, that because the trial court erroneously instructed the jury on malice, the trial court relieved the State of its burden to prove all the essential elements of second degree murder. *Id*. at 386-392, 527 S.E.2d at 299-303. This Court affirmed the trial court, and on discretionary review the Supreme Court affirmed the holding of this Court. *Id*. at 389, 527 S.E.2d at 300. The Supreme Court ultimately held that the jury instructions correctly conveyed the level of recklessness sufficient for the jury to find defendant guilty of second degree murder. In addition, the Supreme Court held that "[b]ecause the trial court's instructions, in their entirety, conveyed the level of recklessness required for second-degree murder, [the Court] cannot conclude that the jury could have confused such a high

degree of recklessness with mere culpable negligence." *Id*. at 394, 527 S.E.2d at 303-04.

In the instant case, the trial court instructed the jury, in pertinent part:

> The defendant has been accused of second-degree murder. Under the law and the evidence in this case, it is your duty to return one of the following verdicts: guilty of second-degree murder or guilty of involuntary manslaughter or not guilty. Second-degree murder is the unlawful killing of a human being by an act done in a culpably negligent way.
>
> Now, for you to find the defendant guilty of second-degree murder . . . the [S]tate must prove seven things beyond a reasonable doubt.
>
> . . .
>
> Sixth, that the defendant acted unlawfully and with malice. Malice is a necessary element which distinguishes second-degree murder from manslaughter. Malice arises when an act, which is inherently dangerous to human life, is intentionally done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief.
>
> . . .
>
> If you do not find the defendant guilty of second-degree murder, you must consider whether the defendant is guilty of involuntary manslaughter. Involuntary manslaughter is the unlawful, unintentional killing of a human being by an act done in a

culpably negligent way. For you to find the defendant guilty of involuntary manslaughter, the [S]tate must prove two things beyond a reasonable doubt.

First, that in operating a motor vehicle, the defendant drove while impaired, as I previously instructed you.

And second, that the defendant's culpable negligence proximately caused the victim's death.

If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant drove a vehicle on a highway, and that when the defendant did so, the defendant was under the influence of an impairing substance or substances, and that the defendant acted intentionally and so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief and that this conduct constituted malice, and that such conduct proximately caused the death of the victim, it would be your duty to return a verdict of guilty of second-degree murder.

If you do not so find, or have a reasonable doubt as to one or more of these things, you will not return a verdict of guilty of second-degree murder, you must then determine whether the defendant is guilty of involuntary manslaughter.

And so, if you find from the evidence beyond a reasonable doubt that on or about the alleged date, the defendant drove a motor vehicle on a highway while impaired and without malice, but in a culpably negligent manner, violated the laws of this state governing the operation of motor vehicles, and that this impaired driving and culpably

> negligent conduct proximately caused the death of the victim, it would be your duty to return a verdict of guilty of involuntary manslaughter.
>
> If you do not so find or have a reasonable doubt as to one or more of these things, you will return a verdict of not guilty.

The trial court's instructions were taken directly from the North Carolina Pattern Jury Instructions, and the definition of malice mirrors, in part, the language of the jury instructions in *Rich*. N.C.P.I. Crim. 206.32; *Rich*, 351 N.C. at 391, 527 S.E.2d at 301. A finding of malice was explicitly limited to the second degree murder instruction, while the element of culpable negligence was limited to the voluntary manslaughter instruction. The trial court specifically instructed the jury regarding involuntary manslaughter that it should return a guilty verdict if it found that defendant drove a motor vehicle on a highway while impaired in a culpably negligent way and *without malice*. Furthermore, the jury did not request a definition of culpable negligence during deliberations. Since the trial court's instructions to the jury explained the type of conduct to find defendant guilty of either second degree murder or involuntary manslaughter were clear and correct, the jury could not have confused such a high degree of recklessness or malice with mere culpable negligence. *Rich*, 351 N.C. at 394,

527 S.E.2d at 304. The jury ultimately returned verdicts finding defendant guilty of second degree murder, indicating that the jurors found defendant's conduct displayed evidence of malice beyond a reasonable doubt.

Assuming, *arguendo*, that the trial court's failure to specifically define culpable negligence did constitute error, any error was harmless because the State presented sufficient evidence to show malice. The State presented evidence that after defendant ingested Xanax and drank alcohol, he attempted to drive his employees home from a job site. The employees were so concerned about defendant's condition that they convinced defendant to allow Sander to drive instead. Despite notice from his employees that he was too impaired to drive, defendant left the gas station and proceeded west down Highway 150, where he crossed into the eastbound lane and collided with Mrs. Wilson's Prius. When paramedics told defendant he had killed or severely injured Mrs. Wilson, he stated that he did not care. Therefore, the State presented sufficient evidence that defendant chose to drive while impaired, regardless of the consequences. The trial court's instructions to the jury on the difference between involuntary manslaughter and second degree murder, without the jury asking for any clarification regarding the instruction,

shows that defendant fails to demonstrate that the jury would have returned a different verdict even with a definition of culpable negligence.

## IV. Ineffective Assistance of Counsel

Defendant finally argues that his trial counsel's failure to request a limiting instruction concerning defendant's driving history constituted ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, defendant must demonstrate that his trial counsel's performance was "deficient," and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984).

In the instant case, defendant's trial counsel objected to the admission of defendant's driving history, but did not request a limiting instruction regarding its admission. Because the driving history was admissible, defendant cannot show prejudice from its admission. In addition, the State presented sufficient evidence to support the jury's finding of malice. It is unlikely that any error in failing to request a limiting instruction regarding defendant's driving record would have led the jury to return a different verdict.

## V. Conclusion

The State offered defendant's driving record specifically for the purpose of showing malice, which is a permissible purpose pursuant to North Carolina case law. In addition, the State presented evidence that defendant was under the impairing influence of both Xanax and alcohol when he collided with Mrs. Wilson's Prius, that he was belligerent with emergency services and hospital personnel, and that he was not concerned about the other driver's welfare. Where the verdict indicates that the jury found evidence of malice beyond a reasonable doubt, defendant fails to show that the jury would have returned a different verdict even with the definition of culpable negligence. Finally, trial counsel's failure to request a limiting instruction did not prejudice defendant, therefore his ineffective assistance of counsel claim is without merit. We hold that there was no error in defendant's trial.

No error.

Judges STROUD and DAVIS concur.

Report per Rule 30(e).