An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-519

Filed 17 September 2025

Johnston County, Nos. 21CR052341-500, 22CR000259-500

STATE OF NORTH CAROLINA

v.

JOE BENTON ARMSTRONG, JR., Defendant.

Appeal by defendant from judgments entered 8 August 2023 by Judge Thomas H. Lock in Superior Court, Johnston County. Heard in the Court of Appeals 18 March 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Jonathan J. Evans, for the State.*

> *Blass Law, PLLC, by Danielle Blass, for defendant-appellant.*

STROUD, Judge.

Defendant Joe Benton Armstrong, Jr. appeals from a judgment entered upon a jury's verdict finding him guilty of second-degree murder, driving while impaired (DWI), and driving while license revoked for an impaired driving revocation (DWLR). On appeal, Defendant argues that the trial court erred in denying his motion to suppress evidence from the blood draw taken after the collision and that the trial

court erred in admitting evidence of Defendant's prior convictions and pending charge for DWI. After careful review, we conclude that Defendant received a fair trial, free from prejudicial error.

## I.    Factual Background and Procedural History

On 7 June 2021, according to eyewitnesses, Defendant was speeding along Highway 42 in Johnston County when he lost control of his vehicle. Defendant's vehicle veered into an oncoming lane of traffic and struck two vehicles awaiting their turn signal at an intersection. The driver of one of those vehicles at the intersection, eighty-eight-year-old Bette Liponis, died from internal injuries to her heart and lungs.

At the scene of the accident, Defendant received medical attention from paramedics, who recommended that Defendant be transported to the hospital by ambulance. Defendant refused medical attention and was released to law enforcement officers. A law enforcement officer with the Johnston County Police Department testified that "[u]pon making contact with [D]efendant, based on my training and experience, I formed an opinion immediately that [D]efendant was appreciably — was [o]n an appreciably impair[ing] substance other than alcohol."

The officer testified that he conducted a "screen device breath test" on Defendant because Defendant acknowledged he had consumed a beer that day; the breathalyzer test yielded a low positive, and the law enforcement officer testified he "did not feel that [Defendant's] impairment was due to alcohol." The officer also

conducted horizontal gaze nystagmus (HGN) and vertical gaze nystagmus (VGN) tests on Defendant, observing all six cues for impairment on the HGN test. law enforcement officer did not observe a vertical nystagmus, indicative that Defendant did not have a high level of drugs in his body at the time of the VGN test.

Defendant was provided with three forms after the accident: an EMS patient discharge form, a voluntary statement form, and a DHHS rights form. Defendant signed the EMS patient discharge form in the box titled "Guardian's name." Next, while in the patrol vehicle, Defendant filled out a "voluntary statement" form; the law enforcement officer testified that Defendant "had much difficulty completing the voluntary statement" and that "[w]hile he was attempting to fill out the statement form[,]" Defendant "was falling asleep in the front of [the law enforcement officer's] vehicle." Finally, at the Johnston County Jail, Defendant signed a DHHS rights form, which, *inter alia*, informs a person of their rights upon a request to submit to chemical analysis, such as a blood test.

Defendant was read his Miranda rights, placed under arrest at the scene of the accident for driving while impaired, and brought to the Johnston County Jail. The law enforcement officer testified that EMS personnel came to the jail to conduct a blood draw, and that, as noted above, Defendant consented to the blood draw when he signed the DHHS rights form. Forensic analysis of the blood sample taken from Defendant at the Johnston County Jail showed positive results for cocaine.

Defendant was indicted upon a true bill of indictment by a Johnston County

Grand Jury on 7 March 2022. Before trial, Defendant moved to suppress the results of the blood sample taken from Defendant on the day of the accident because there was no voluntary consent to the blood draw and no warrant, in violation of Defendant's federal and state constitutional rights. On 5 July 2023, the trial court conducted a pretrial hearing on Defendant's motion to suppress the results of Defendant's blood draw. The trial court ultimately denied Defendant's motion to suppress the blood draw.

The matter came on for trial 24 July 2023 in Superior Court, Johnston County. At trial, the State presented evidence—admitted over Defendant's objection—of Defendant's four prior convictions for DWI, in 2003, 2006, 2010, 2012, and a pending DWI charge from 2020. Defendant was ultimately found guilty upon a jury's verdict of second-degree murder, DWI, and DWLR. Pursuant to the jury's guilty verdicts, Defendant was sentenced to 325-402 months imprisonment for second-degree murder, and 120 days for DWLR. Defendant entered timely oral notice of appeal in open court.

## II.    Discussion

On appeal, Defendant contends that "[t]he trial court erred in denying [Defendant]'s motion to suppress the warrantless blood draw." He also argues that "[t]he trial court erred in admitting [Defendant]'s prior DWI convictions and excessive evidence of a pending DWI to show malice."

### A.    Standard of Review

"When evaluating a trial court's ruling on a motion to suppress, its findings of fact will be binding on appeal if supported by any competent evidence." *State v. Barnhill*, 166 N.C. App. 228, 230, 601 S.E.2d 215, 217 (2004). "The trial court's findings of fact which are supported by competent evidence are conclusive on appeal even if the evidence is conflicting." *State v. Bucklew*, 280 N.C. App. 494, 498, 867 S.E.2d 362, 369 (2021) (quotation marks, citation, and ellipsis omitted). However, "[t]he trial court's conclusions of law are reviewed de novo and must be legally correct." *Id.* (brackets and citation omitted).

Defendant's brief contends that it is unclear whether the trial court found as a fact or made a conclusion of law that his consent was voluntary. He argues that "either way, there was no competent evidence to support a finding, or a conclusion, that there was a valid consent." Regardless of whether the trial court characterized this as a finding of fact or a conclusion of law, we review the trial court's order based on its substance. *See Walsh v. Jones*, 263 N.C. App. 582, 589, 824 S.E.2d 129, 134 (2019) (observing that the "labels 'findings of fact' and 'conclusions of law' employed by the trial court in a written order do not determine the nature of our review. If the trial court labels as a finding of fact what is in substance a conclusion of law, we review that 'finding' de novo").

Although the trial court made a conclusion of law that "Defendant's consent to the blood draw was given knowingly and voluntarily," this is actually a finding of fact "to be determined from the totality of the circumstances:"

In *Schneckloth v. Bustamonte*, the United States Supreme Court held that 'the question whether a consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.' 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (quotation marks omitted). In 2017, our State Supreme Court cited *Bustamonte* approvingly, concluding that the voluntariness of a search under the Fourth Amendment is a question of fact to be determined from the totality of the circumstances. *State v. Romano*, 369 N.C. 678, 691, 800 S.E.2d 644, 652 (2017). Moreover, our Supreme Court has previously reversed the decision of this Court based upon the trial court's failure to 'make a specific finding as to whether [the defendant] voluntarily consented' to a search. *Smith*, 346 N.C. at 801, 488 S.E.2d at 214.

Thus, the question of whether consent to a search is voluntarily given by a defendant under the Fourth Amendment is one of fact, not law. *Romano*, 369 N.C. at 691, 800 S.E.2d at 652; *Smith*, 346 N.C. at 801, 488 S.E.2d at 214. In determining the voluntariness of consent to a search, the State bears the burden of proving 'that consent was, in fact, freely and voluntarily given.' *Romano*, 369 N.C. at 691, 800 S.E.2d at 653 (citation and quotation marks omitted).

Consent is not voluntary if it is the product of duress or coercion, express or implied. A court's decision regarding whether a suspect's consent was voluntary is based on . . . careful scrutiny of all the surrounding circumstances and does not turn on the presence or absence of a single controlling criterion. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness.

*State v. Hall*, 268 N.C. App. 425, 429-30, 836 S.E.2d 670, 674 (2019).

## B.     Motion to Suppress: Blood Draw

On appeal, Defendant argues that "the trial court erred in denying

[Defendant]'s motion to suppress the warrantless blood draw" because "there was no voluntary consent and no warrant[,] in violation of [Defendant]'s federal and state constitutional rights and his North Carolina statutory rights."

"The governing premise of the Fourth Amendment is that a governmental search and seizure of private property unaccompanied by prior judicial approval in the form of a warrant is *per se* unreasonable unless the search falls within a well-delineated exception to the warrant requirement." *Id.* at 428-29, 836 S.E.2d at 673 (ellipsis and citation omitted). "Consent has long been recognized as a special situation excepted from the warrant requirement, and a search is not unreasonable within the meaning of the Fourth Amendment when lawful consent to the search is given." *Id.* at 429, 836 S.E.2d at 673 (ellipsis and citation omitted). "For the warrantless, consensual search to pass muster under the Fourth Amendment, consent must be given and the consent must be voluntary." *Id.* "Whether the consent is voluntary is to be determined from the totality of the circumstances." *Id.*

"Consent is not voluntary if it is the product of duress or coercion, express or implied." *Id.* at 430, 836 S.E.2d at 674 (citation omitted). "A court's decision regarding whether a suspect's consent was voluntary is based on careful scrutiny of all the surrounding circumstances and does not turn on the presence or absence of a single controlling criterion." *Id.* (ellipsis and citation omitted). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness." *Id.* (citation omitted).

Here, the trial court made forty-eight detailed findings of fact, and Defendant specifically challenges only Finding No. 48 as unsupported by the evidence. In some of the unchallenged findings, the trial court found that "[a]t the [Johnston County] [J]ail, [the law enforcement officer] advised [D]efendant of his implied consent rights to prepare to take a sample of Defendant's blood to test for controlled substances" and that "Defendant signed the implied consent rights form, indicating his consent." The trial court also determined that "Defendant's signature [on the implied consent rights form] was consistent with his signature on his Voluntary Statement[.]" Ultimately, in Finding No. 48, the trial court found that "[w]hen Defendant was informed of his implied consent rights, Defendant was under the influence of an impairing substance, but he understood his rights and that he could refuse the blood draw."

Much of Defendant's argument simply argues inferences from the evidence in a manner more favorable to his position that he was unable to give voluntary consent based on his injury from the collision or his impairment, but we are bound by the trial court's findings of fact which are not challenged as unsupported by the evidence. *See State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) ("However, when, as here, the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal."). Defendant does not contend that he did not sign the consent form; he contends only that "there was no competent evidence of valid consent" because the State did not show that Defendant understood what he was signing. Although the record shows that

Defendant exhibited adverse physical symptoms after the accident, Defendant's argument on appeal implies that he may have suffered a head injury in the collision that impaired his ability to consent.

However, there was no evidence presented at the hearing on the motion to suppress that Defendant *did* suffer a head injury or trauma as a result of the accident. According to the trial court's findings of fact, Defendant was evaluated by EMS personnel at the scene and he was "discharged by EMS workers to [the law enforcement officer]'s custody continuing with the collision investigation." The law enforcement officer also did a "'medical rule-out' before beginning the HGN test to ensure Defendant did not have a head injury." Defendant also notes his difficulty "standing and walking" after the collision, but the trial court's findings addressed this evidence also. The trial court found Defendant told the law enforcement officer that "he use[d] a cane to walk due to a previous surgery on his left foot, but [Defendant] did not have the cane with him." In addition, "Defendant walked from the ambulance to [the law enforcement officer]'s vehicle without assistance." The law enforcement officer declined to conduct "further field sobriety testing pursuant to Defendant's statements that he uses a cane, which would make it difficult for Defendant to complete those tests, regardless of impairment."

The trial court's ultimate finding that Defendant's consent to the blood draw was knowing and voluntary is supported by the facts, considering the "totality of the circumstances" as described in the trial court's detailed findings of fact. *Romano*, 369

N.C. at 691, 800 S.E.2d at 652. Therefore, we conclude that the trial court did not err in denying Defendant's motion to suppress the results of the warrantless blood draw, because Defendant knowingly and voluntarily consented by signing the rights form.

## C.     Prior Convictions under Rule 403

Next, Defendant argues that "the trial court erred in admitting [Defendant]'s prior DWI convictions and excessive evidence of a pending DWI to show malice." Again, we do not agree.

The trial court's ruling as to the admissibility of evidence under Rule 403 lies "within the sound discretion of the trial court, and the trial court' ruling should not be overturned on appeal unless the ruling was 'manifestly unsupported by reason or [was] so arbitrary that it could not have been the result of a reasoned decision." *State v. Hyde*, 352 N.C. 37, 55, 530 S.E.2d 281, 291 (2000) (citation omitted). Rule 403 of the North Carolina Rules of Evidence states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2023).

However, Rule 404(b) of the North Carolina Rules of Evidence allows for evidence of other crimes, wrongs, or acts to be used for purposes *other than* "to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b). Our Supreme Court has recognized that Rule

404(b) is a "rule of inclusion of relevant evidence of other crimes, wrongs, or acts by a defendant, subject to but one exception requiring its exclusion if its *only probative value* is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Badgett*, 361 N.C. 234, 243, 644 S.E.2d 206, 212 (2007) (emphasis added) (citation omitted). Finally, our Courts have held that "prior driving convictions of a defendant are admissible to show malice, and the showing of malice in a second-degree murder case is a proper purpose within the meaning of Rule 404(b)." *State v. Westbrook*, 175 N.C. App. 128, 132, 623 S.E.2d 73, 76-77 (2005).

Here, the State did not present evidence of Defendant's four prior convictions for DWI to show a propensity or disposition to commit the offense of DWI, but rather to prove malice, an element of second-degree murder, an offense Defendant had not previously been convicted of. The evidence of the prior convictions therefore offered probative value beyond the "propensity or disposition to commit an offense of the nature of the crime charged," DWI, but rather, as the State noted at trial, to demonstrate malice, that Defendant had "[z]ero regard on [7 June] 2021 for any human life out on the roadways."

Rule 404(b) "however, is constrained by the requirements of similarity and temporal proximity." *Id.* (internal quotation marks and citation omitted). "When the features of the earlier act are dissimilar from those of the offense with which the defendant is currently charged, such evidence lacks probative value." *Id.* (citation

omitted).  After careful review, we conclude that the trial court did not abuse its discretion in admitting the evidence of Defendant's prior convictions for DWI as these offenses are sufficiently similar to the offense at issue in the present case to establish malice.

In considering the temporal limitation of Rule 404 (b), "when otherwise similar offenses are distanced by significant stretches of time, commonalities become less striking, and the probative value of the analogy attaches less to the acts than the of character of the actor."  *Id.*  "The relevance of a temporally remote traffic-related conviction to the question of malice does not depend solely upon the amount of time that has passed since the conviction took place[,] [r]ather, the extent of its probative value depends largely on intervening circumstances."  *State v. Schmieder*, 265 N.C. App. 95, 99, 827 S.E.2d 322, 327 (2019).

Defendant relies upon *State v. Goodman* and *State v. Davis* to assert that his four prior convictions for DWI are too remote to be admissible.  In *State v. Goodman*, the defendant had been arrested six times for driving while impaired—but none of those convictions occurred within the eight years preceding that case, and only *one* had occurred within sixteen years of that case.  149 N.C. App. 57, 73, 560 S.E.2d 196, 206 (2002).  Similarly, in *State v. Davis*, there was a sixteen-year gap between offenses for the defendant.  208 N.C. App. 26, 45, 702 S.E.2d 507, 520 (2010).  In *State v. Westbrook*, this Court found that the defendant's argument "that [his] nine-year-old conviction was too remote to be relevant" was "without merit" and observed

instances where this Court found convictions that were "over fifteen years old admissible" to show malice in a second-degree murder case. 175 N.C. App. at 132-33, 623 S.E.2d at 77.

Here, Defendant was last convicted for DWI in 2012, nine years prior to his arrest in the present case, and has convictions spanning back as far as 2003. For nearly twenty-years, Defendant has exhibited a pattern of driving while impaired—with convictions in 2003, 2006, 2010, 2012, and a pending charge for DWI in 2020. Defendant's prior convictions are not too remote, as the convictions in *Goodman* and *Davis* were found to be; instead, they demonstrate Defendant's "malice" and conscious disregard to an unjustifiably high risk to human life when he chose to drive under the influence for (at least) the *sixth* time in eighteen years.

Therefore, we conclude that the trial court did not abuse its discretion in admitting evidence of Defendant's prior convictions for DWI in 2003, 2006, 2010, 2012 because these offenses were not too remote nor dissimilar to the offense for which Defendant was charged in the present case, DWI *and* second-degree murder, to be inadmissible under Rule 403 of the North Carolina Rules of Evidence.

### 1. *Evidence of pending DWI charge*

Defendant does not challenge the evidence of the pending DWI charge based on Rule 404(b) but argues that even if evidence of the pending DWI was admissible under Rule 404(b), it "should have been excluded under Rule 403 of the North Carolina Rules of Evidence." Defendant contends that the State offered "an enormous

volume of testimonial evidence for the pending DWI," by presenting three witnesses over two days. He argues that the "probative value regarding the pending change was substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, and needless presentation of cumulative evidence."

Defendant also contends that "the trial court failed to provide a limiting instruction prior to, or contemporaneously with, the testimony of the State's lab analyst or the law enforcement officer, each of whom testified only regarding the pending matter." He argues that "the sheer volume of testimony, three witnesses over two days on the pending matter (as well as a fourth witness for the prior convictions)," along with the fact that "the State chose to separate out the testimony of the daughter-in-law of the deceased in the current case and sandwich it between the 404(b) testimony, which contained no limiting instructions or defining introduction, likely confused and misled the jury."

Thus, Defendant has raised two separate concerns. First, he contends the State presented an "enormous volume" of evidence regarding the pending DWI and this evidence took a great deal of time. However, Defendant did not object to the amount or duration of this evidence at trial and he has thus waived this argument on appeal. *See State v. Golphin*, 352 N.C. 364, 463, 533 S.E.2d 168, 232 (2000) ("Tilmon's failure to object at trial waived his right to have this issue reviewed on appeal."). At trial, Defendant's only objection was that the evidence was "obviously highly

prejudicial" and that his trial attorney, who did not represent Defendant on the DWI charge, was not prepared to "try a case within a case." During the trial, Defendant also made general objections referring back to his motion in limine, which had raised his objections to evidence of the pending DWI based only on the general language of Rules 404(a)-(b) and 403.

To the extent that Defendant's general objections at trial included Rule 403, Defendant has not demonstrated that the trial court abused its discretion as to the amount of evidence presented by the State. We note that the amount of time it takes to present evidence is not necessarily a controlling factor. The complexity of the evidence the State seeks to present dictates the amount of time necessary to present the evidence. In addition, Defendant has not shown that evidence presented was needlessly repetitive or duplicative.

Defendant's second concern is the lack of an instruction to the jury regarding the limited purpose of the evidence of the pending DWI. He contends that "there was a high danger that the jury would confuse the issues" because of the voluminous evidence of prior convictions, and ultimately, to "be misled," so the trial court should have provided "a limiting instruction to emphasize to the jury that the testimony [wa]s *about a pending matter*, not a conviction" or the charges for which Defendant was on trial. (Emphasis added.) But at trial, Defendant specifically approved the language used by the trial court in the instructions the trial court gave to the jury about the limited purpose of the evidence. The trial court had a colloquy with counsel

regarding the wording of this instruction before the State's first witness regarding

the pending DWI, Officer Mallett, was called to testify:

> THE COURT: With regard to what I will tell the jury prior to Officer Mallet's testimony is I think I would say evidence is -- is being offered at this time tending to show that on an earlier occasion, now I can say [D]efendant allegedly committed the offense of driving while impaired, or I can just simply say tending to show that at an earlier occasion [D]efendant was charged with driving while impaired, or I can use some other wording. What do you folks suggest? I'm looking at the pattern instruction. Parenthetically it says the Court is to state the specific evidence.
>
> [THE STATE]: I don't have objection to allegedly charged or alleged –
>
> THE COURT: Well, not allegedly charged.
>
> [THE STATE]: I'm sorry. Allegedly impaired. Is that –
>
> THE COURT: What says the defense?
>
> [DEFENSE COUNSEL]: Your Honor, *I think I'd actually prefer to say that he had been charged.*
>
> THE COURT: I will word it that way. I don't know that it matters all that much. On occasion prior to the offense charged in this case [D]efendant was charged with the crime of driving while impaired. This evidence is received solely for the purpose of showing malice in this case, which is a necessary element of the crime of the alleged crime of second[-]degree murder. If you believe this evidence, you may consider it, but only for the limited purpose for which it is received. You may not consider it for any other purpose. Does that instruction appear to be satisfactory for the State?
>
> [THE STATE]: Yes, your Honor.

- 16 -

> THE COURT: For . . . [D]efendant?
>
> [DEFENSE COUNSEL]: Yes, your Honor.

(Emphasis added.)

Defendant did not request any alternative wording regarding the pending DWI charge. Therefore, at trial Defendant approved the trial court's instruction noting that the evidence to be considered for the limited purpose of malice would be that "[D]efendant was charged with the crime of driving while impaired." Also, the trial court gave this instruction several times during the State's evidence.

The next day of trial, before testimony from another State's witness, the trial court asked if

> the defense [is] requesting that the [c]ourt, again, give the limiting instruction that the evidence is received solely for the limited purpose of showing malice? I have [d]one it twice, and I will do it again in my charge to the jury. But do you want it to be given now then?

Defendant requested that the same instruction be given again, and the trial court gave the instruction. And in the final charge conference, Defendant also noted a minor correction to the proposed jury instruction on the limited purpose of the evidence and the trial court made this correction:

> THE COURT: Well, we will tell the jury that they may consider evidence of the pending charge only for the limited purpose of tending to show malice, and for no other purpose. If you wish any additional curative instruction, I would ask that you write it down overnight. Submit it in writing in the morning, and I will consider your request.

[DEFENSE COUNSEL]: Yes, your Honor.

THE COURT: I will hear from the State in the morning too.

[THE STATE]: All right. Thank you.

The next morning, Defendant requested a correction to the jury instruction regarding the limited purpose of the evidence of the pending DWI and prior convictions; the trial court made the requested correction, and gave the instruction:

> Evidence has been received tending to show that [D]efendant[,] prior to the date of the offenses charged in this case[,] had been convicted of driving while impaired. And evidence has been received concerning the circumstances giving rise to charges of driving while impaired, and driving with a driver's license that had been revoked for the commission of an impaired driving offense that were pending against [D]efendant at the time of these alleged crimes.
>
> This evidence was received solely for the limited purposes of showing, if you find that it tends to show: One, malice, which is a necessary element of the crime of second[-]degree murder charged in this case. Two, the status of [D]efendant's driver's license on the date of the offenses charged in this case. And three, that [D]efendant had notice of the status of his driver's license on the date of the offenses charged in this case. If you believe this evidence, you may consider it, but only for the limited purposes for which it was received. You may not consider it for any other purpose.

Defendant's argument that the trial court failed to instruct on the limited purpose of the evidence of the pending DWI is simply not supported by the record, as the trial court did instruct the jury repeatedly on this issue. Defendant did not request any different or additional instruction. As Defendant "failed to specifically

request or tender a limiting instruction at the time the evidence was admitted, [he] is not entitled to have the trial court's failure to give limiting instructions reviewed on appeal." *State v. Stager*, 329 N.C. 278, 310, 406 S.E.2d 876, 894 (1991). This argument is deemed abandoned.

### III. Conclusion

We conclude that the trial court did not err in denying Defendant's motion suppress the evidence from the blood draw, nor did the trial court abuse its discretion by admitting evidence of Defendant's prior DWI convictions and the pending DWI. The trial court gave proper instructions regarding the limited purpose of showing malice. Defendant received a fair trial, free from prejudicial error.

NO ERROR.

Judges COLLINS and STADING concur.

Report per Rule 30(e).